[Crim. No. 3954. In Bank.—March 13, 1936.]

THE PEOPLE, Respondent, v. EARL BUD KIMBALL, Appellant.

L. C. Anderson, Al. B. Broyer and Harvey A. Shiffer for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

WASTE, C. J.—Defendant, a youth twenty-two years of age, was charged with murder in an information filed by the district attorney of the county of Placer. He entered pleas of not guilty and not guilty by reason of insanity. Subsequently, he withdrew the former plea, thereby admitting the commission of a wilful and premeditated homicide as charged (sec. 1016, Pen. Code), and went to trial solely on the sanity issue. At the conclusion of the trial the jury found defendant to be sane at the time of the perpetration of the offense and the trial court imposed the extreme penalty. Defendant appealed from the judgment and order denying a new trial.

While on the witness stand in his own behalf, the defendant admitted having killed two men, for the murder of one of whom he now stands convicted. The other victim remains unidentified. The bodies of his victims had been concealed by dropping them into an abandoned mine shaft. They were discovered purely by accident in a search for cattle that had been missing in the vicinity. Though defendant

testified that when quite young he had been kicked in the head by a mule, there is nothing in his testimony that would warrant a finding of insanity. He called no other witnesses in his behalf.

The two alienists appointed by the court to examine the defendant, and one called by the prosecution, testified, in substance, that their respective examinations of defendant satisfied them that defendant presented no evidence of any of the known psychoses or mental diseases, but rather fell into the classification of the "criminalistically inclined". Each alienist expressed the opinion that defendant, at the time of the perpetration of the homicide of which he stands convicted, knew the nature and quality of his act and understood the difference between right and wrong.

This evidence is ample to support the verdict that defendant was sane. It is settled that "responsibility depends upon whether the defendant knew the nature and quality of the act at the time of its commission, and the wrongfulness of the act. If he had sufficient mental capacity to know what he was doing, and to know that it was wrong, he is legally accountable for his act. Even though he may be mentally abnormal or defective, or may suffer from some nervous disorder, he is, under our law, held to full responsibility for his act unless the evidence brings him within the strict legal meaning of insanity." (*People* v. *Dugger, ante,* p. 337 [54 Pac. (2d) 707]; *People* v. *Keaton,* 211 Cal. 722, 724 [296 Pac. 609].)

It is urged that the court below erred in admitting the testimony of certain witnesses tending to prove the *corpus delicti* and defendant's connection therewith. He contends that by his single plea of insanity he admitted the offense and that the testimony complained of served only to prejudice him before the jury. There is no merit in the point. The trial court declared that the evidence was admitted solely for whatever bearing it might have on the sanity issue. As to the propriety of the ruling there can be no question. In 8 California Jurisprudence, page 51, section 162, it is said, in part, that it is "competent to prove the acts, conduct and declarations of the defendant, not only at the time of, but also within a reasonable time before and after, the commission of the alleged criminal act, if they appear to have any tendency to show his mental condition when the crime was

committed''.  The matter rests largely in the discretion of the trial court.  No abuse thereof appears in this case. Moreover, while on the witness stand in his own behalf, the defendant narrated many of the circumstances connected with the homicide.

Throughout the trial defendant was handcuffed to an officer.  He now contends that the effect of this was (a) to deprive him of a fair and impartial trial, (b) to compel him to be a witness against himself, (c) to deprive him of the right to confer with counsel without the hearing of an officer and (d) to deprive him of his liberty without due process of law.

After he had voluntarily taken the witness stand in his own behalf and following the testimony of two of the alienists, defendant for the first time objected to being manacled to the officer.  In support of his motion to be released from bonds, the defendant cited the case of *People* v. *Harrington*, 42 Cal. 165 [10 Am. Rep. 296].  While ordinarily a defendant should not be manacled or unduly restrained when in court, the cited case recognizes that such restraint is proper when necessary for his detention.  The instant case did not present the usual or ordinary situation.  In opposition to defendant's motion to be released from the manacles, the prosecution produced evidence tending to show that defendant had expressed an intent to escape; that he had threatened to injure or kill three or four witnesses in the courtroom by striking them over the heads with a chair; that on the first day of the trial a piece of lead pipe, fourteen inches in length, was found concealed in the top of one of his boots and under the leg of his overalls; and that on the afternoon of the same day there was found concealed on his person a bar of hard, dry soap wrapped in a handkerchief, in the nature of a sling.  Under the circumstances, there was no error in manacling defendant throughout the trial.

We find no error or abuse of discretion in the ruling of the trial court refusing to permit the defendant to make the closing argument on the sanity issue.  (*People* v. *Hickman*, 204 Cal. 470, 482 [268 Pac. 909, 270 Pac. 1117] ; *People* v. *Goold*, 215 Cal. 763, 766 [12 Pac. (2d) 958].)

The judgment and order are, and each is, affirmed.

Seawell, J., Thompson, J., Shenk, J., Curtis, J., and Langdon, J., concurred.