[Crim. No. 18573. In Bank. Feb. 27, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNARDO GUITERREZ DURAN, Defendant and Appellant.

## COUNSEL

Clyde M. Blackmon and Norman W. de Carteret for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Karen R. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant Bernardo Guiterrez Duran appeals from a judgment upon jury convictions of assault with a deadly weapon by a life-term prisoner (Pen. Code, § 4500) and possession of a dirk or dagger when confined in prison (Pen. Code, § 4502).[1] He contends that the trial court committed prejudicial error in denying his motion to appear before the jury in street clothes and without handcuffs or other shackles, in prohibiting cross-examination intended to show the bias of a prosecution witness and in erroneously excluding evidence on hearsay grounds. We conclude, based upon the nature of the total evidence adduced in the

---

[1]Penal Code section 4500 provided at the times here relevant in pertinent part: "Every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another, other than another inmate, with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; however, in cases in which the person subjected to such assault does not die within a year and a day after such assault as a proximate result thereof, or the person so assaulted is another inmate, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same, and the matter of punishment shall be determined as provided in Section 190.1 of this code. . . ." (Stats. 1965, ch. 1904, § 1, p. 4412.)

Penal Code section 4502 provides in pertinent part: "Every person confined in a state prison . . . who . . . possesses or carries upon his person or has under his custody or control . . . any dirk or dagger or sharp instrument . . . is guilty of a felony and shall be punishable by imprisonment in a state prison for a term not less than three years."

instant case, that the errors complained of by defendant were prejudicial and require reversal of the judgment.[2]

Some 40 inmates were present in the plaza area of the California Men's Colony during an afternoon laundry exchange in April 1973. The inmates were supervised by guards in the plaza area, including Officers Martin and Santana. A guard in an observation tower, who had not theretofore observed any unusual activity, suddenly saw an inmate clutch his stomach and fall to his knees. Using the public address system the officer in the tower directed Martin to assist the fallen inmate and ordered Santana to stop another inmate who was running from the scene. The officer in the tower did not recognize the fleeing inmate. Santana apprehended defendant after the latter fell when he bumped a door frame through which he was attempting to flee. A single scissor blade was found approximately three feet from where defendant fell. The inmate victim, Sprague, sustained four wounds, two of which were deep punctures that could have been inflicted by the scissor blade. There were no identifiable fingerprints on the blade and the small amount of dried blood on the blade could not be identified by blood type.

No witness testified that he saw a stabbing or identified defendant as having attacked the victim with a weapon.[3] Each of the guards who testified stated that defendant was the inmate who ran from the scene. Sprague testified that although he did not see who perpetrated the attack he was certain defendant was not his assailant since the only person nearby when he was stabbed had a distinguishable hair style unlike that of the defendant. Inmate Gallegos, who was standing near the victim when the stabbing occurred, testified that he saw defendant swing his arm several times in Sprague's direction just before Sprague fell to his knees. However, Gallegos stated that he did not see a scissor blade or other weapon in defendant's hand. Defendant testified that he hurriedly left the scene to avoid any connection with the incident after seeing Sprague stagger and fall.

---

[2]We note that the case at bar does not involve a situation wherein the defendant was seen in shackles for only a brief period either inside or outside the courtroom by one or more jurors or veniremen. (See *Kennedy* v. *Cardwell* (6th Cir. 1973) 487 F.2d 101, 109-110 and cases cited therein.) Such brief observations have generally been recognized as not constituting prejudicial error. (*Id.; United States* v. *Larkin* (1st Cir. 1969) 417 F.2d 617; *O'Shea* v. *United States* (1st Cir. 1968) 400 F.2d 78.)

[3]A first trial ended in an unchallenged mistrial. The testimony referred to herein was adduced at the second trial.

Defense counsel made a motion prior to trial that defendant and his inmate witnesses be allowed to appear before the jury in civilian clothes and without wrist and ankle restraints.[4] The motion was summarily denied. Counsel then asked if defendant could have one hand freed in order to take notes during the trial. This request was granted but the court stated that defendant's wrists and ankles would be shackled when he testified.

The rules governing the imposition of physical restraints[5] upon criminal defendants find their origin in the English common law. Thus Blackstone wrote, ". . . though under an indictment of the highest nature, [the prisoner] must be brought to the bar without irons or any manner of shackles or bonds, unless there be evident danger of an escape, and then he may be secured with irons." (4 Blackstone's Commentaries 322; see also 2 Hale, Pleas of the Crown 219, which reiterates Blackstone's observation and adds, "[b]ut *note,* at this day [prisoners] usually come with their schackles upon their legs, for fear of an escape, but stand at bar unbound, till they receive judgment"; 2 Bishop, New Commentaries on the Law of Pleading and Evidence and the Practice in Criminal Cases (2d ed. 1913) 955, which states that the prisoner should be unshackled in the courtroom so as to have " 'use of his reason, and all advantages, to clear his innocence' " Krauskopf, *Physical Restraint of the Defendant in the Courtroom* (1971) 15 St. Louis U.L.J. 351.)

Recognizing these common law pronouncements, we held over 100 years ago in *People v. Harrington* (1871) 42 Cal. 165, that "any order or action of the Court which, without evident necessity, imposes physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense; and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf." (*Id.,* at p. 168.) We held accordingly that it was prejudicial

---

[4] The rules articulated hereinafter are applicable to the shackling of defendants and defense witnesses, since the considerations supporting use of physical restraints are similar in each instance. (See *Kennedy* v. *Cardwell, supra,* 487 F.2d 101, 105, fn. 5, and authority cited therein.) As *Kennedy* notes, however, the prejudicial effect of shackling defense witnesses is less consequential since "the shackled witness . . . [does] not directly affect the presumption of innocence." (*Id.*)

[5] The term "physical restraints" as used in this opinion refers to all forms of handcuffs, shackles, manacles, leg irons, and other restraining devices. (See ABA Standards, Trial by Jury, stds. 93-94, § 4.1(c) (Approved Drafts 1968).)

error, a violation of the common law rule and a violation of section 13 of the Criminal Practice Act, for the trial court to refuse to allow the defendant to appear before the jury without physical restraints unless there was "evident necessity" for the restraint.[6]

We have subsequently adhered to the *Harrington* rule. In *People v. Kimball* (1936) 5 Cal.2d 608 [55 P.2d 483], which involved a defendant who was handcuffed to an officer throughout the trial, we held that a defendant could not ordinarily be restrained when appearing in court. However, we held the defendant's expressed intention to escape, his threats to kill three or four witnesses, and the discovery of a homemade weapon in his boot on the first day of trial to constitute sufficient justification for the use of handcuffs. In *People v. Ross* (1967) 67 Cal.2d 64 [60 Cal.Rptr. 254, 429 P.2d 606] (revd. on other grounds, *Ross v. California* (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850]) we stated, citing *Harrington,* that unless there is a danger of escape, "an accused is entitled to appear during the progress of his trial free of shackles." (*People v. Ross, supra,* 67 Cal.2d 64, 72.) We noted, however, that it was permissible to transport the prisoner to court in handcuffs and to keep him in such restraints until he entered the courtroom. (*Id.;* see also *People v. Hillery* (1967) 65 Cal.2d 795, 806 [56 Cal.Rptr. 280, 423 P.2d 208].) The physical restraint issue was most recently addressed in *People v. Chacon* (1968) 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454], wherein we stated that a "defendant may be required to undergo reasonable restraints when they are necessary to assure his detention or to maintain order in the courtroom." (*Id.,* at p. 778.) *Chacon* also emphasized the necessity of objecting to use of physical restraints and noted that not only was the limited restraint of handcuffing justified for defendant Chacon, but also that defense counsel had voiced no objections to the restraints.[7] (*Id.*)

---

[6]Section 13 has been recodified as Penal Code section 688, which reads, "No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."

[7]Defendant Chacon was charged with assault with a deadly weapon by a life prisoner. (Pen. Code, § 4500.) He had been previously convicted of first degree murder, second degree robbery, and battery by an inmate on a noninmate. One of his codefendants had been convicted of attempted escape by force or violence from the county jail. (Pen. Code, § 4532.) All three codefendants had been convicted of assaults committed while in prison. Although *Chacon* does not disclose precisely what acts justified handcuffing the defendant, that decision indicates that the presence of multiple defendants in the courtroom, all of whom were charged with an in-prison assault, three of whom had prior convictions for in-prison assaults, and one of whom had a prior attempted escape conviction, warranted the limited restraint. We do not consider the use of such restraint in that case to be inconsistent with the rules set forth for use of physical restraints which are discussed hereinafter.

Numerous Court of Appeal decisions have also adhered to a physical restraint rule which is consistent with *Harrington. People* v. *Burnett* (1967) 251 Cal.App.2d 651 [59 Cal.Rptr. 652], citing *Harrington,* states that "[t]he courts have always recognized that unnecessary show of restraint of an accused in the presence of the jurors is prejudicial. Ordinarily, the defendant should not be manacled or unduly restrained." (*Id.,* at p. 655; see also *People* v. *Ray* (1967) 252 Cal.App.2d 932, 973 [61 Cal.Rptr. 1]; *People* v. *Thompson* (1937) 23 Cal.App.2d 339, 341 [72 P.2d 927].)

Little has been written since *Harrington* about the reasons for limiting the use of physical restraints. We believe that it is manifest that the shackling of a criminal defendant will prejudice him in the minds of the jurors. When a defendant is charged with any crime, and particularly if he is accused of a violent crime, his appearance before the jury in shackles is likely to lead the jurors to infer that he is a violent person disposed to commit crimes of the type alleged. (See *Illinois* v. *Allen* (1970) 397 U.S. 337, 344 [25 L.Ed.2d 353, 359, 90 S.Ct. 1057]; *Odell* v. *Hudspeth* (10th Cir. 1951) 189 F.2d 300.) The removal of physical restraints is also desirable to assure that "every defendant is . . . brought before the court with the appearance, dignity, and self-respect of a free and innocent man." (*Eaddy* v. *People* (1946) 115 Colo. 488, 492 [174 P.2d 717]; see also *Illinois* v. *Allen, supra,* 397 U.S. 337, 350-351 [25 L.Ed.2d 353, 362-363] (Brennan, J. concurring); *Kennedy* v. *Cardwell, supra,* 487 F.2d 101, 104; Helwig, *Coping With the Unruly Criminal Defendant: The Option of the Allen Case* (1971) 7 Gonzaga L.Rev. 17.) Finally, the United States Supreme Court has acknowledged that physical restraints should be used as a last resort not only because of the prejudice created in the jurors' minds, but also because "the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." (*Illinois* v. *Allen, supra,* 397 U.S. 337, 344 [25 L.Ed.2d 353, 359].)

■ We believe that possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand, all support our continued adherence to the *Harrington* rule. We reaffirm the rule that a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a

showing of a manifest need for such restraints.[8] (See *Kennedy* v. *Cardwell, supra,* 487 F.2d 101, 102.) Numerous cases indicate what circumstances will demonstrate such a need. (See *People* v. *Kimball, supra,* 5 Cal.2d 608, 611 [defendant expressed intention to escape, threatened to kill witnesses, secreted lead pipe in courtroom]; *People* v. *Burwell* (1955) 44 Cal.2d 16, 33 [279 P.2d 744] [defendant had written letters stating that he intended to procure a weapon and escape from the courtroom with the aid of friends]; *People* v. *Chacon, supra,* 69 Cal.2d 765, 778 [see fn. 7, *ante*]; *People* v. *Hillery* (1967) 65 Cal.2d 795, 806 [56 Cal.Rptr. 280, 423 P.2d 208] [defendant had resisted being brought to court, refused to dress for court, and had to be taken bodily from prison to court]; *People* v. *Burnett* (1967) 251 Cal.App.2d 651, 655 [59 Cal.Rptr. 652] [evidence of escape attempt]; *People* v. *Stabler* (1962) 202 Cal.App.2d 862, 863-864 [21 Cal.Rptr. 120] [defendant attempted to escape from county jail while awaiting trial on other escape charges]; *People* v. *Loomis* (1938) 27 Cal.App.2d 236, 239 [80 P.2d 1012] [defendant repeatedly shouted obscenities in the courtroom, kicked at the counsel table, fought with the officers, and threw himself on the floor].) We further conclude that in any case where physical restraints are used those restraints should be as unobtrusive as possible, although as effective as necessary under the circumstances.[9]

In the interest of minimizing the likelihood of courtroom violence or other disruption the trial court is vested, upon a proper showing, with discretion to order the physical restraint most suitable for a particular defendant in view of the attendant circumstances. The showing of nonconforming behavior in support of the court's determination to impose physical restraints must appear as a matter of record and, except where the defendant engages in threatening or violent conduct in the presence of the jurors, must otherwise be made out of the jury's presence. The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or other nonconforming conduct will be deemed to constitute an abuse of discretion. In those instances when visible restraints must be imposed the court shall instruct

---

[8]We are not here concerned with the use of armed guards in the courtroom. Unless they are present in unreasonable numbers, such presence need not be justified by the court or the prosecutor. (*People* v. *David* (1939) 12 Cal.2d 639, 644 [86 P.2d 811]; *People* v. *Harris* (1950) 98 Cal.App.2d 662, 664-665 [220 P.2d 812]; see also *Kennedy* v. *Cardwell, supra,* 487 F.2d 101, 108-109; *United States* v. *Henderson* (5th Cir. 1973) 472 F.2d 556, 557; *Dennis* v. *Dees* (E.D.La. 1968) 278 F.Supp. 354.)

[9]We recognize that shackles or manacles are not easily hidden from the jury's view and do not wish to imply that they should not be used simply because they are obtrusive. We simply note that less drastic and less visible restraints should be employed when, in the exercise of his discretion, the judge concludes it is safe to do so.

the jury *sua sponte* that such restraints should have no bearing on the determination of the defendant's guilt. However, when the restraints are concealed from the jury's view, this instruction should not be given unless requested by defendant since it might invite initial attention to the restraints and thus create prejudice which would otherwise be avoided.[10]

Some recent decisions of the Court of Appeal have employed an analysis of the physical restraints issue inconsistent with that adopted in *Harrington*. In *People* v. *Morris* (1971) 20 Cal.App.3d 659 [97 Cal.Rptr. 817], it is stated that the decision to manacle a defendant was within the trial judge's discretion and that the jurors would disregard the presence of shackles as a collateral matter unrelated to the process of guilt determination. *Morris* held that "the vagaries of each individual case, the variation in security facilities in different jurisdictions, the conduct and attitude of a defendant and/or his counsel, and a myriad of other factors all play a part in the decision of the trial judge as to what action must be taken with respect to restraints upon the defendant. The trial judge is in the very best position to make that judgment. We should adhere to the basic presumption that the trial judge has faithfully performed his duty *until and unless the defendant shows without equivocation that there was no basis whatever for the restraint employed.*" (Italics added; *id.*, at p. 666; see also *People* v. *Pena* (1972) 25 Cal.App.3d 414, 424-427 [101 Cal.Rptr. 804] and *People* v. *Earl* (1973) 29 Cal.App.3d 894, 900-901 [105 Cal.Rptr. 831], both of which adopt *Morris'* language concerning the trial court's power to order physical restraints and the defendant's burden to show the restraints were unlawfully imposed.) *Morris* is inconsistent with our views in that it not only affords the trial court virtually unlimited discretion to order shackling or other restraints but also places an extremely heavy burden upon the defendant to show an abuse of discretion. Accordingly, we conclude that to the extent *Morris, Pena* and *Earl* are inconsistent with this opinion they are disapproved.

We are not unmindful of the dangers posed by unruly defendants or by those who have expressed an intention to escape.[11] The rule expressed

---

[10]The American Bar Association has recommended that neither the defendant nor the witnesses should be physically restrained unless the trial court finds the use of physical restraints is necessary for maintaining order. When restraints are used the American Bar Association recommends that the court state its reasons on the record and admonish the jury to disregard the physical restraints in determining guilt. (ABA Standards, Trial by Jury, § 4.1(c) (Approved Draft 1968).)

[11]We do not mean to imply that restraints are justified only on a record showing that the accused is a violent person. An accused may be restrained, for instance, on a showing that he plans an escape from the courtroom or that he plans to disrupt proceedings by nonviolent means. Evidence of any nonconforming conduct or planned nonconforming

herein should not afford such defendants any solace, as their words or actions are likely to justify restraints. However, we cannot condone physical restraint of defendants simply because they are prisoners already incarcerated on other charges or convictions.[12]

■ We next consider whether shackling of the defendant in the case at bar was an abuse of discretion. No reasons for shackling the defendant appear on the record. There is no showing that defendant threatened to escape or behaved violently before coming to court or while in court. The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints. As our discussion heretofore indicates, the trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record. The court's summary denial of the motion to release defendant from his shackles was not based upon such a showing of record and implies a general policy of shackling all inmate defendants accused of violent crimes. We therefore conclude that it was an abuse of discretion to shackle defendant.[13]

■ Defendant next claims that the trial court erred in its refusal to allow defense counsel to make inquiry on cross-examination designed to impeach the testimony of inmate Gallegos. Gallegos had testified that he saw defendant swing his arm several times in the victim's direction although the witness did not see a weapon in defendant's hands. Defendant offered to prove that Gallegos, who stated on direct examination that no promises had been made to him in exchange for his testimony, had refused to testify at the preliminary hearing but had stated that he would testify at trial if he had received by that time a

conduct which disrupts or would disrupt the judicial process if unrestrained may warrant the imposition of reasonable restraints if, in the sound discretion of the court, such restraints are necessary.

[12]The imposition of restraints in a proper case is normally a judicial function in which the prosecutor plays no necessary part. Although the prosecutor may bring to the court's attention matters which bear on the issue, it is the function of the court, not the prosecutor, to initiate whatever procedures the court deems sufficient in order that it might make a due process determination of record that restraints are necessary. The court's determination, however, when made in accordance with our views herein, cannot be successfully challenged on review except on a showing of a manifest abuse of discretion.

[13]For an enlightening explanation of the proper scope of appellate review of an alleged abuse of discretion in the imposition of physical restraints when the trial court has stated reasons on the record, see *Kennedy* v. *Cardwell, supra,* 487 F.2d 101, 110-112.

parole date, and that he had subsequently received favorable parole consideration. The court rejected the offer on the ground that defense counsel failed to demonstrate any basis for the proposed inquiry, although counsel had produced a document which he stated was a pretrial report concerning Gallegos' availability and intentions as a witness.

Defense counsel's showing in support of a belief that Gallegos might be impeached was far from compelling but it nevertheless demonstrated that counsel was acting in good faith and might anticipate that his inquiry could be productive. He was thus entitled to explore what inducements, if any, had been afforded the witness, particularly when it was the prosecution which first raised the issue of such inducements. (Evid. Code, § 780, subd. (f); *People* v. *Winston* (1956) 46 Cal.2d 151, 157 [293 P.2d 40]; *People* v. *Brown* (1970) 13 Cal.App.3d 876, 883 [91 Cal.Rptr. 904].) In *People* v. *Ruthford* (1975) 14 Cal.3d 399 [121 Cal.Rptr. 261, 534 P.2d 1341] we stated that a promise made to a witness that in exchange for his testimony his wife would receive a light sentence in another matter, was the basis for a "crucial attack by the defense upon the credibility of the key prosecution witness." (*Id.,* at p. 410.) We held in that case that the failure of the prosecutor to apprise the defense that such a promise had been made was misconduct which required reversal of the judgment of conviction. Here, too, the witness subject to impeachment was a key prosecution witness, in fact, he was the only witness who testified that defendant struck at the victim. It was thus error to deny defendant the right to explore on cross-examination the possible inducement for Gallegos' testimony.

█ Defendant also contends that the court erred in sustaining a hearsay objection when defendant attempted to explain the circumstances which induced him to leave the scene of the stabbing. According to defendant's offer of proof, he would have related warnings from correctional officers at a time when defendant had been punished for prison rule infractions that he could not again afford to become involved in any further incident or investigation while a prisoner. Defendant maintained that at the time of the stabbing he believed he would be adversely affected if he became involved in the investigation for the stabbing and, thus motivated, he fled the scene in the hope that he would not be associated with the incident or involved in the forthcoming investigation. The court received defendant's testimony as to his reasons for fleeing but refused on hearsay grounds to permit him to bolster such testimony by relating the warnings which had earlier been given him.

The matter at issue is defendant's state of mind at the time he fled from the scene of the stabbing. A declaration of a state of mind is not made inadmissible by the hearsay rule when offered to prove the acts or conduct of the declarant. (Evid. Code, § 1250, subd. (a)(2).) That exception is not applicable here as defendant has made no extrajudicial declaration of his state of mind which has been offered as evidence. Defendant has, rather, directly testified as to his state of mind. The extrajudicial statements which he offered are not his statements and are not declarations of his state of mind. They constitute only background material which, with other evidence, accounted for the state of mind testified to by defendant. The warnings were thus not offered to prove the matters asserted in the warnings, i.e., that defendant could not afford to become involved in an investigation, but rather were offered to prove that defendant reasonably entertained the particular state of mind which he claimed.[14] Such extrajudicial statements which lend credibility to an asserted state of mind are relevant, competent evidence. (*Werner* v. *State Bar* (1944) 24 Cal.2d 611, 621 [150 P.2d 892]; *People* v. *Contreras* (1962) 201 Cal.App.2d 854, 857 [20 Cal.Rptr. 551].) The settled and applicable rule "is stated in VI Wigmore on Evidence. . . . 'Whenever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned.' (Emphasis the author's.)" (*People* v. *Roberson* (1959) 167 Cal.App.2d 429, 431 [334 P.2d 666].)

It was error, accordingly, to reject on hearsay grounds defendant's offer of the warnings in an attempt to lend credibility to his stated reasons for fleeing the scene of the stabbing.

■ We next consider whether the errors require reversal of the judgment. We are satisfied that defendant was prejudiced in the circumstances of this case. The evidence inculpating defendant does not compel a guilty verdict. The guards, the inmate witnesses and the victim were unable to identify defendant as having inflicted the victim's wounds. The only witness who connected defendant with the victim might have been impeached had defendant been afforded a proper and full opportunity to cross-examine. Although defendant did flee from the scene he was not in immediate possession of a weapon when apprehend-

---

[14]The extrajudicial warnings were thus not hearsay evidence. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at a hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).)

ed and he was denied a proper and full opportunity to explain why he fled. The scissor blade found nearby may have been the weapon used but neither blood type nor fingerprint evidence established that it was in fact the weapon ·or that it had been in defendant's possession. Defendant, who elected to testify in his own behalf, was required to appear as a witness with both wrist and ankle restraints, thereby damaging his credibility as a witness. We are of the opinion upon our examination of the entire cause that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the errors. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)[15]

Defendant's other contentions need not be considered.[16]

The judgment is reversed.

Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—I dissent. The trial judge did not abuse his discretion in denying the motion to remove defendant's restraints.

The appropriate standard for reviewing the trial court's exercise of its discretion in such matters was reiterated in *People* v. *Morris* (1971) 20 Cal.App.3d 659 [97 Cal.Rptr. 817]. "[T]he vagaries of each individual case, the variation in security facilities in different jurisdictions, the conduct and attitude of a defendant and/or his counsel, and a myriad of other factors all play a part in the decision of the trial judge as to what action must be taken with respect to restraints upon the defendant. The trial judge is in the very best position to make that judgment. We should adhere to the basic presumption that the trial judge has faithfully

---

[15]We express no opinion whether any one or more of the errors herein resulted in deprivation of any federal constitutional right of sufficient stature to require reversal based upon the rule of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (See, however, *Donnelly* v. *DeChristoforo* (1974) 416 U.S. 637 [40 L.Ed.2d 431, 94 S.Ct. 1868]; *Cupp* v. *Naughten* (1973) 414 U.S. 141 [38 L.Ed.2d 368, 94 S.Ct. 396].)

[16]Because the judgment is reversed we need not consider defendant's contention that it was improper to sentence him for both the assault with a deadly weapon (Pen. Code, § 4500) and the possession of that very weapon (Pen. Code, § 4502). We note, however, that as there is no evidence in the record now before us that defendant possessed the weapon except during the assault (see *People* v. *Jurado* (1972) 25 Cal.App.3d 1027, 1033-1034 [102 Cal.Rptr. 498]) he could not have been properly sentenced under both violations found against him. (Pen. Code, § 654.)

performed his duty until and unless the defendant shows without equivocation that there was no basis whatever for the restraint employed." (*Id.,* at p. 666; see *People* v. *Coleman* (1973) 32 Cal.App.3d 853, 859 [108 Cal.Rptr. 573]; *People* v. *Earl* (1973) 29 Cal.App.3d 894, 900-901 [105 Cal.Rptr. 831]; *People* v. *Pena* (1972) 25 Cal.App.3d 414, 424-427 [101 Cal.Rptr. 804].)

Defendant made no such showing here. To the contrary, the threat to courtroom security inherent in defendant's propensity to violence was amply demonstrated: first, by his prior conviction for first degree robbery (Pen. Code, §§ 211, 211a); second, by the magistrate's finding in the present case that probable cause existed to believe defendant guilty of assault with a deadly weapon while serving a life sentence (Pen. Code, § 4500) and possession of a dirk or dagger while confined in prison (Pen. Code, § 4502). Moreover, the security of the courtroom was further jeopardized by the attendance of numerous inmate witnesses. To find abuse of discretion in such circumstances is to grossly overvalue the defendant's rights at the expense of the safety of everyone else in the courtroom. (Cf. *People* v. *Harris* (1975) 15 Cal.3d 384, 392-393 [124 Cal.Rptr. 536, 540 P.2d 632] (Clark, J., dissenting).)

Assuming arguendo that the trial judge may have erred in declining to remove defendant's shackles, it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (See Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also *Donnelly* v. *DeChristoforo* (1974) 416 U.S. 637 [40 L.Ed.2d 431, 94 S.Ct. 1868]; *Cupp* v. *Naughten* (1973) 414 U.S. 141 [38 L.Ed.2d 368, 94 S.Ct. 396].) The jury knew from both the nature of the charges and from the testimony that defendant was a state prison inmate. Therefore, the shackles not disclosing this information, where lies the prejudice? (See *People* v. *Ross* (1967) 67 Cal.2d 64, 72 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Coleman, supra,* 32 Cal.App.3d at p. 859; *People* v. *Pena, supra,* 25 Cal.App.3d at p. 426.) Nor did defendant's shackles single him out; the inmate witnesses called by the People, including the victim, were also shackled. (See *People* v. *Pena, supra,* 25 Cal.App.3d at. p. 427.) Finally, the majority offer no evidence, either empirical or anecdotal, to support their assumption that restraints prejudice the jury against the defendant. Is not the opposite more likely the case? That is, by appealing to the American instinct in

favor of the apparent underdog, are not restraints likely to create sympathy for the defendant among the jurors?[1]

The other errors alleged were also harmless. Defendant sought to impeach inmate Gallegos on the ground that he was to receive parole in exchange for his testimony. However, defendant's offer of proof did not support this charge; if anything, it tended to prove the contrary.[2] Therefore, any error in foreclosing this line of inquiry appears harmless.

The remaining error alleged is sustaining of a hearsay objection to defendant's proposed explanation of the circumstances giving rise to the state of mind in which he fled from the scene of the stabbing. Defendant contends that, although guiltless, he fled because he was afraid to become "involved" in the incident. As the majority point out, defendant was permitted to so testify, but was prevented from explaining the circumstances giving rise to his state of mind. According to the majority, defendant offered to testify that when he was punished for prior prison rule infractions he had been warned *by correctional officers* that he could not afford to become involved in further incidents or investigations. (*Ante,* p. 294.) Had defendant actually offered to so testify, exclusion of the testimony might have been prejudicial. However, defendant did *not* attribute the warnings to correctional officers; he attributed them to no one.[3] The trial judge accurately characterized the proposed testimony as the repetition of "[p]rison gossip, grapevine talk." As such, it would have added no weight to the testimony defendant did give as to his state of mind.

There is no evidence that defendant's possession of the scissor blade was "antecedent and separate" from the stabbing. Therefore, imposition of sentence on both counts constituted double punishment within the meaning of section 654 of the Penal Code. (See *People* v. *Venegas* (1970) 10 Cal.App.3d 814, 821 [89 Cal.Rptr. 103].) Accordingly, the punishment provided for violation of section 4500 of the Penal Code being greater than that provided for violation of section 4502, execution of sentence for

---

[1]This hypothesis would account for the fact that when restraints are recommended it is never the prosecutor, but rather the defendant's custodian, who makes the recommendation.

[2]Defendant's offer of proof was that the following report had been prepared concerning Gallegos' availability as a witness: "Gallegos, eyewitness, will not testify at the prelim, but probably will at the trial if he has his expected date. (Received parole date of 4/7/74.)"

[3]Defendant's offer of proof consisted in the following testimony: "I was told several times that people coming from [Vacaville] going to other prisons would have to walk a straight line. They cannot afford to become involved in any type of investigation or any type of incident because they will be watching real closely and things like this sort."

the latter offense should be stayed. (See *People* v. *Beamon* (1973) 8 Cal.3d 625, 640 [105 Cal.Rptr. 681, 504 P.2d 905].)

I would affirm the judgment in other respects.

McComb, J., concurred.