*470 LIU, J., Concurring.
I join today’s opinion except for its conclusion that the trial court acted within its discretion in ordering defendants to wear either shackles or a stun belt. Our case law makes clear that before a trial court may order such restraints, “[t]he record must demonstrate that the trial court independently determined on the basis of an on-the-record showing of defendant’s nonconforming conduct that ‘there existed a manifest need to place defendant in restraints.’ [Citation.]” (People v. Mar (2002) 28 Cal.4th 1201, 1218 [124 Cal.Rptr.2d 161, 52 P.3d 95] (Mar); see People v. Duran (1976) 16 Cal.3d 282, 290-291 [127 Cal.Rptr. 618, 545 P.2d 1322].) The “manifest need” standard “is relatively narrow. [Citation.] ‘Manifest need’ arises only upon a showing of unruliness, an announced intention to escape, or ‘[e]vidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained . . . .’ [Citation.] Moreover, ‘[t]he showing of nonconforming behavior . . . must appear as a matter of record ....’” (People v. Cox (1991) 53 Cal.3d 618, 651 [280 Cal.Rptr. 692, 809 P.2d 351] (Cox); see Mar, at p. 1220 [the record must “demonstrate that the trial court actually determined that defendant posed the type of serious security threat at trial that would justify the imposition of restraints under the ‘manifest need’ standard”].)
In its analysis of the stun belt issue (maj. opn., ante, at pp. 388-392), today’s opinion does not cite any independent determination by the trial court that an on-the-record showing of manifest need justified the imposition of restraints on each defendant. And the reason is simple: there is none in this record.
As the court notes, “[djuring several years of court proceedings none of the defendants had been disruptive in court, nor had any escape plots been uncovered. There was no indication Bryant and Smith had been violent while in pretrial custody.” (Maj. opn., ante, at p. 391.) Nevertheless, the court says, “[a]s to Bryant, the [trial] court was informed that he had been disciplined in the jail for possessing improper amounts of razor blades and food items, suggesting he was still engaged in organized illicit activities while in custody.” (Id. at p. 392.) But the trial court made no finding that Bryant posed a threat in the courtroom, and the trial court nowhere relied on Bryant’s possession of improper items in jail as a basis for its decision to order restraints. (See Mar, supra, 28 Cal.4th at p. 1220 [the circumstances justifying the restraint must be “adequately established on the record and actually relied upon by the trial court”].)
As to Wheeler, today’s opinion says “the court knew he had been formally charged and held to answer for an attempted murder of a jail inmate and an assault with a deadly weapon on a guard that had occurred during his pretrial incarceration.” (Maj. opn., ante, at p. 392.) However, when the trial court *471 mentioned this, Wheeler’s counsel interjected that there was “no evidence” before the court that Wheeler had done “anything while in custody,” only “an allegation.” After determining there were two pending cases against Wheeler that were “trailing” this case, the trial court said: “I would assume since they are in superior court some finding has been made by somebody that the allegations are not woven out of cloth. But I will concur that there is no conviction. But they resulted in the filing of two felony matters.” The trial court’s statement that “some finding has been made by somebody” hardly qualifies as an independent, substantiated finding of manifest need. The fact that Wheeler faced felony charges from the two incidents is insufficient, for we have said that “when the imposition of restraints is to be based upon conduct of the defendant that occurred outside the presence of the court, sufficient evidence of that conduct must be presented on the record so that the court may make its own determination of the nature and seriousness of the conduct and whether there is a manifest need for such restraints; the court may not simply rely upon the judgment of law enforcement or court security officers or the unsubstantiated comments of others.” (Mar, supra, 28 Cal.4th at p. 1221, italics added; see People v. Hill (1998) 17 Cal.4th 800, 841 [72 Cal.Rptr.2d 656, 952 P.2d 673] [“A trial court abuses its discretion if it abdicates this decisionmaking responsibility to security personnel or law enforcement.”].)
Today’s opinion further says: “Although the court did not conduct a formal hearing with the presentation of evidence, the matter was discussed over the course of two pretrial proceedings, and the court summarized the case-specific information upon which it based its decision.” (Maj. opn., ante, at p. 391.) Presumably this is a reference to the trial court’s statement that “the four defendants, and others that are not before the court, involved themselves for years and years and year's in ongoing criminal activity of every description including homicides, drug dealing, et cetera.” The record makes clear, however, that the trial court did not indicate that defendants and others had in fact been involved in such conduct. It prefaced the quoted statement with the following: “The allegation is, and again it is an allegation, I don’t know if it will be proven or not, but the People will try to prove that . . . .” When the court later held another hearing regarding restraints and juror anonymity, it noted: “There will be evidence in the case, from what I am told at least by all counsel, to suggest that over a number of years the defendants in this case involved themselves in a fairly widespread and fairly powerful criminal organization involved in a wide range of criminal activity including narcotic dealing, crimes of violence.” These remarks indicate that, to the extent the trial court based its ruling on defendants’ long-term involvement in criminal activity, it was relying not on its own independent review of the evidence but
*472 on allegations and representations as to the evidence that would be introduced. But again, a trial court “may not simply rely upon the judgment of law enforcement or court security officers or the unsubstantiated comments of others” in ordering restraints. (Mar, supra, 28 Cal.4th at p. 1221.)
The crux of this court’s analysis is its assertion that “[t]he trial court had before it a great deal of credible information from the preliminary hearings, charging documents, trial briefs, other summaries of the intended evidence, and in-court representations of counsel that defendants were part of a large-scale and extremely violent drug organization, with many members remaining at large.” (Maj. opn., ante, at p. 391.) But this litany provides no basis for upholding the trial court’s ruling under our well-established standards. First, none of this material — “preliminary hearings,” “charging documents,” “trial briefs,” “intended evidence,” “in-court representations” (ibid.) — comprised an “on-the-record showing” (Mar, supra, 28 Cal.4th at p. 1218) or “ ‘[e]vidence’ ” (Cox, supra, 53 Cal.3d at p. 651) of the threat posed by any defendant. Second, most of this material suggested what “the Family” might do to disrupt the trial, not what any of the three defendants might do. Third, as noted, the record does not “demonstrate that the trial court independently determined on the basis of an on-the-record showing of [each] defendant’s nonconforming conduct that ‘there existed a manifest need to place [each] defendant in restraints.’ ” (Mar, at p. 1218, italics added.) And fourth, the record does not show that the preliminary hearings or other information in the cited materials was “actually relied upon by the trial court.” (Id. at p. 1220.) In sum, a straightforward application of our settled law to this record yields the conclusion that the trial court erred in ordering restraints as to each defendant.
However, our recent decision in People v. Jackson (2014) 58 Cal.4th 724, 742-748 [168 Cal.Rptr.3d 635, 319 P.3d 925], dictates that the erroneous use of stun belts on these defendants must be deemed harmless. Jackson held that a stun belt error is harmless beyond a reasonable doubt when the record reveals no “evidence” or “indication” that the stun belt adversely affected the defendant. (Id. at p. 748.) In this case, some jurors might have seen a lump under defendants’ clothes and inferred that they were wearing a security device. But defendants point to nothing in the record showing that the stun belts adversely affected their demeanor or ability to assist counsel, or otherwise impaired their participation in the trial. Although I believe our penalty phase holding in Jackson contravenes the clear mandate in Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824], that it is the state’s burden to demonstrate lack of prejudice, not the defendant’s burden to demonstrate prejudice (see Jackson, at pp. 777-778 (cone. & dis. *473 opn. of Liu, J.)), Jackson is controlling here and does not authorize reversal of the guilt or penalty verdicts on the basis of the stun belt error. Accordingly, I concur in today’s judgment.
Appellants’ petition for a rehearing was denied October 1, 2014, and the opinion was modified to read as printed above.