Filed 9/24/24  P. v. Naylor CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANKLIN DEAN NAYLOR, JR.,<br><br>Defendant and Appellant. | F086088<br><br>(Super. Ct. No. 1439445)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Franson, Acting P. J., Meehan, J. and Snauffer, J.

Defendant Franklin Dean Naylor, Jr., contends on appeal that the judgment must be reversed because the trial court prejudicially erred when it ordered him to be physically restrained during trial. The People disagree. We affirm.

**PROCEDURAL SUMMARY**

On January 2, 2013, the Stanislaus County District Attorney filed an information, charging defendant with making a criminal threat (Pen. Code, § 422;[1] count 1). It was further alleged that defendant had prior strikes (§§ 667, subd. (a), 1170.12, subd. (a)–(d)). It was further alleged he had two prior felony convictions (§ 667, subd. (d)); two prior serious felony convictions (§ 667, subd. (a)); and had served four prior prison terms (§ 667.5, subd. (b)). The case was consolidated with case No. 1443774, wherein defendant was charged with interfering with an officer's official duties by means of threat (§ 71; count 2); case No. 1456475, wherein defendant was charged with battery on a custodial officer (§ 243.1; count 3); and case No. 1456879, wherein defendant was charged with assault on a custodial officer (§ 241.1; count 4).

On April 15, 2014, defendant pled not guilty by reason of insanity to interfering with an officer's official duties by means of threat (§ 71; count 2). He pled no contest to battery on a custodial officer (§ 243.1; count 3) and assault on a custodial officer (§ 241.1; count 4). Defendant also admitted one prior conviction (§ 667, subd. (d)).

On count 2, the trial court committed defendant to a state hospital. On count 3, the court sentenced defendant to one year, four months (one-third of the midterm), consecutive. On count 4, the court sentenced defendant to one year, four months (one-third of the midterm), consecutive. The sentences on counts 3 and 4 were consecutive to a 12-year sentence he was serving when the underlying offenses were committed but were stayed pursuant to section 1026 and throughout his commitment to the State Department of State Hospitals.

---

[1] All statutory references are to the Penal Code.

On November 4, 2022, a section 1026.5 petition for extension of involuntary civil commitment was filed.  On March 17, 2023, the jury found true beyond a reasonable doubt that defendant qualified for recommitment to the State Department of State Hospitals.  On March 21, 2023, the trial court ordered recommitment of defendant to the State Department of State Hospitals for two years, until June 25, 2024.

On April 5, 2023, defendant timely filed a notice of appeal.

<b><u>DISCUSSION</u></b>[2]

Defendant contends the trial court abused its discretion when it ordered him to be restrained by a restraint chair during trial because it based its decision only on the bailiff's comments about his past verbal outbursts, and the restraint chair would not prevent verbal outbursts.  He further contends the error was prejudicial, as it impaired his ability to participate effectively in his trial.  The People disagree.  We agree with the People.

## I.      RESTRAINT DURING TRIAL

Defendant first contends the trial court abused its discretion when it ordered him to be restrained during trial because it based its decision solely on the bailiff's comments to the court about his past verbal outbursts.  He further argues the restraint chair ordered by the court would not prevent such verbal outbursts.

### A.      Background

On March 14, 2023, while discussing preliminary issues prior to trial, the court stated,

> "So while that's being said, I believe the sheriff that runs the security here is concerned about security and some things that have happened as well as the Court has some concerns because of, you know, some of the things that have happened in court, [defendant], when we've been present. And I know that it took me a while to find an attorney that would actually be able to represent you here, because we did have some outbursts at times

---

[2]      We omit the underlying facts, as they are not relevant to defendant's appeal.

3.

where you on the record threatened to kill one of your attorneys, and so that can't happen here. But also, that causes the Court some concern about the safety of everyone, including yourself, because if anything—if you start to act out at all, then the deputies are going to have to take action, and unfortunately, I have seen that happen before.…

"So [defense counsel] has done a request that [defendant] not be shackled during the pendency of his trial. The Court does have a chair here that has—it's a physical restraint that goes around the waist. It has holes in the back, and the person can wear some items, although I don't see that [defendant] has his suit jacket. A lot of times we get like a jacket, [defense counsel], because then no one can tell that the person has any restraints."

The trial court continued,

"The Court can't help but also notice that there was a report by the Department of State Hospitals, although it was a kind of a little older report now because we've been here for a while, but the reason why we're here and the People have filed this Petition is because they have indicated in their expert opinion that [defendant] represents a danger and has poor impulse control and bad temper, impaired insight and judgment.

"So, unfortunately, they're [*sic*] have been some past acts here in court that caused the Court some concern about [defendant]'s ability to remain calm and not do anything that would harm anyone."

The bailiff then stated to the trial court,

"[Defendant] tends to have outbursts. He has outbursts. He can be very calm for a moment and then he will have outbursts. So having him restrained to the chair, I think, will help with some of those outbursts. I have been around him multiple times where he is calm for a moment and then when he hears something that he didn't like, he definitely has outbursts, and most of these times it's been when he is in a cell, and he has those outbursts here in court as well."

The trial court then stated, "And the Court has viewed those, a number of those, unfortunately, here in the courtroom. So he has been taken out and removed."

Defense counsel stated,

"Your honor, I would want to clarify that when people are referring—when [the bailiff] is referring to outbursts, she is personally referring to verbal, not physical."

4.

The trial court responded,

> "Well, but the yelling and screaming and threatening is concerning
> to the Court. [¶] … [¶] That's been at a time when [defendant] has been
> shackled completely and can't go anywhere and there is several guards
> around him. So I mean that being the case, I really—I think there's—it
> seems to me that to not have him shackled around the waist, his hands are
> going to be free. He can write."

The trial court stated it would also "order all the attorneys, too, to be seated, so that way they're kind of restrained too in a way." The court stated it was "important not to make [defendant] look different than anyone else, that the parties just remain seated here at counsel table."

The trial court then stated,

> "I do think there is a manifest need for the waist restraints to be on.
> I don't see prejudice weighing the balance there to [defendant], as his hands
> will be free, at least right now. You know, there will be nothing that
> prevents him from doing anything that the attorneys are able to do really,
> too. Nothing that is different than for any other defendant. And I will not
> let the jury know that he is restrained.

> "Obviously, [defendant], if you try to get up and you try to move or
> do anything because you're upset, then they're going to learn that you're
> restrained. So if you need a break, like I said, just tell your attorney you
> need a break. Sometimes we all have those moments where things have
> happened and we just need to calm down. It's better to just give you a
> break and let you calm down than having any problems. If you need
> anything, let us know.

> "With all that being said, [defense counsel], if there is any issue for
> [defendant] as far as outbursts, any attempts to yell and scream or attack
> anyone or threaten anyone, as you know, [defense counsel], a person can
> lose their right to even be in court. But certainly the Court may have to
> take other measures, safety measures for everyone. That includes for
> [defendant]. As I have said, [defendant], these deputies, they have special
> training in martial arts and everything, and so they know how to prevent
> anyone from causing harm. By the same token, when they do that, if they
> take you down to the ground or something, you could get hurt. We don't
> want that to happen to anyone. I don't want anyone to get hurt: [t]he
> deputies, you, the attorneys, any of the court staff or any of the jurors. But

if there are some problems with behavior, the Court then will have to take corrective action and will. The Court can sanction attorneys if they don't behave right. I can order them to pay fines. I can order that people be removed from the courtroom if they're not behaving properly. And that includes you, [defendant]. I don't want to do that, and I assume you want to hear all the evidence that the [prosecution] has here that they want to present against you. So if you need that break, just let me know and we'll take that break. I think that will help prevent any problems. And you have an attorney. So talk through your attorney.…

"But I do find the manifest need to shackle the waist right now. Otherwise, [defendant] will be otherwise able to assist counsel and I don't see any problem with as long as both sides follow the Court's orders, that they not let the jury know that he is shackled or anything and that won't be a problem."

After argument from defense counsel, the trial court again stated it found it necessary to restrain defendant by the waist. It stated,

"The Court understands those cases and is thoroughly familiar with the law and the case law on shackling. And the Court has concern also about those concerns that you voiced, but the Court also has to be, concerned about safety of everyone in the courtroom. And based on what I have observed based on the information that I have heard, I do find it is necessary and I don't find, at least right now what we're doing, to be prejudicial to the jury because at least right now as long as everyone behaves, the jury will never know that he's shackled. They'll never be able to find that out as long as he behaves. Because as I have indicated, if he doesn't, then, well, then the chair will come up with him. It just keeps the chair tied to him so that way it's more difficult for him to cause issues with other people. And so it's a minimal restraint as far as I can see. The Court may have to progress from there. If that does happen, we will discuss that further on the record. I think right now, that is the minimum amount of restraint the Court needs to ensure safety for everyone in the courtroom."

### B.     Law

" 'In general, the "court has broad power to maintain courtroom security and orderly proceedings" [citation], and its decisions on these matters are reviewed for abuse of discretion. [Citation.] However, the court's discretion to impose physical restraints is constrained by constitutional principles. Under California law, "a defendant cannot be

6.

subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." [Citation.] Similarly, the federal "Constitution forbids the use of visible shackles … unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." ' " (*People v. Poore* (2022) 13 Cal.5th 266, 285 (*Poore*); accord, *People v. Bracamontes* (2022) 12 Cal.5th 977, 991; *People v. Young* (2019) 7 Cal.5th 905, 934.) "[P]hysical restraints should be used as a last resort not only because of the prejudice created in the jurors' minds, but also because 'the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.' " (*People v. Duran* (1976) 16 Cal.3d 282, 290 (*Duran*).)

" 'A court's decision about the use of restraints involves a prediction of the likelihood of violence, escape, or disruption weighed against the potential burden on the defendant's right to a fair trial. Given the serious potential consequences on both sides of the scale, the range of factors the court may consider in assessing and weighing the risks should be broad.' [Citation.] The necessary individualized assessment requires a determination, based on the totality of the circumstances, that a defendant presently intends to engage in nonconforming courtroom behavior, i.e., conduct that ' "would disrupt the judicial process if unrestrained." ' " (*People v. Bracamontes*, *supra*, 12 Cal. 5th at p. 992.) " ' "In deciding whether restraints are justified, the trial court may 'take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.' [Citation.] These factors include evidence establishing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior." ' " (*Bracamontes*, at p. 991; accord, *People v. Young*, *supra*, 7 Cal.5th at pp. 934–935.) It need not be shown that the defendant is a violent person. (*Duran*, *supra*, 16 Cal.3d at p. 292, fn. 11.) A showing that the defendant plans to attempt to escape or intends to nonviolently disrupt the proceeding may be sufficient. (*Ibid*.)

"Although no formal hearing on the matter is required [citation], 'when the use of restraints is based on conduct of the defendant that occurred outside the presence of the trial court, sufficient evidence of such conduct must be presented on the record so that the court may make its own determination of the nature and seriousness of the conduct and whether there is a manifest need for such restraints. [Citation.] The court may not, we have emphasized, merely rely on the judgment of law enforcement or court security officers or the unsubstantiated comments of others.' [Citation.] Finally, when the evidence establishes a manifest need for restraints, the court should impose the least obtrusive or restrictive restraint that would be effective under the circumstances." (*Poore*, *supra*, 13 Cal.5th at p. 285.)

" ' "[W]e will not overturn a trial court's decision to restrain a defendant absent 'a showing of a manifest abuse of discretion.' " [Citation.] To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that "falls outside the bounds of reason." ' " (*People v. Miracle* (2018) 6 Cal.5th 318, 346; accord, *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390.)

### C. Analysis

Here, the trial court's decision to restrain defendant during the proceedings by using a restraint chair, in which he was shackled around the waist, was not an abuse of discretion, as the manifest need for restraining him was supported by evidence on the record that he was likely to disrupt the proceedings or otherwise engage in nonconforming behavior, and the court's order was not based solely on the bailiff's comments.

Defendant argues the court erred when it imposed restraints on defendant because the trial court's basis for restraining him came only from the bailiff's comments about defendant's past verbal outbursts. He further contends the court gave no consideration as to how the restraints would prevent or lessen such verbal outbursts, making the order an unreasonable evaluation of the facts presented.

8.

However, the record indicates the trial court was " 'aware of its obligation [under *Duran*] to make its own determination on the need for restraints, and not simply defer to the wishes of the prosecutor or courtroom security personnel.' " (See *People v. Simon* (2016) 1 Cal.5th 98, 117.)  Rather, the trial court's statement shows it based its decision on evidence in the record and not merely representations of the bailiff.  Here, in addition to the statement by the bailiff discussing defendant's past verbal outbursts in custody and in court, the trial court also discussed its own observations, where defendant had disrupted prior proceedings.  This included defendant's statement before the same court in a prior hearing where he said, referring to his defense counsel, "I am going to assault this b[****] if you don't get her off my case."  (See *People v. Cox* (1991) 53 Cal.3d 618, 651–652, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 417; *Duran*, *supra*, 16 Cal.3d at p. 291.)

The trial court further explained in its statement that defendant's outbursts in court had only been verbal because he had been completely shackled when he made the verbal outbursts.

The trial court further demonstrated its understanding of its duty under the *Duran* line of cases by noting at the start of the proceeding that the mere fact of defendant's conviction and potential sentence could not justify imposition of the restraints.  (See *Duran*, *supra*, 16 Cal.3d at p. 293 ["we cannot condone physical restraint of defendants simply because they are prisoners already incarcerated on other charges or convictions"].)

The trial court's statement also shows it took measures to ensure it used the least restrictive restraint possible and to ensure the restraints would not be seen by the jury.  It stated the restraint chair would allow defendant to write, and that defense counsel could bring a jacket for him to wear so the restraint would not be visible.  Further, the court stated counsel would have to remain seated during proceedings so that defendant would not be the only person who was seated.

9.

As it need not be shown that the defendant is a violent person and a trial court's finding that a defendant is likely to nonviolently disrupt the proceeding may be sufficient, the court's order does not fall outside the bounds of reason. (See *Duran*, *supra*, 16 Cal.3d at p. 292, fn. 11.) Here, the court's findings and analysis based on evidence in the record were sufficient to show a manifest need for the restraint chair, as defendant's disruptive behavior during prior court proceedings, including his threat against defense counsel, justified the imposition of restraints. (See *People v. Combs* (2004) 34 Cal.4th 821, 838.)

## II.    PREJUDICE

Defendant further contends he was prejudiced by the trial court's order for restraints because the restraints impaired his judgment during trial and because it is only speculation that the jury could not see the restraints. As discussed above, we have concluded defendant's restraints were justified by manifest need and the court did not err in imposing them. However, even were a claim of error successfully made, the record does not support defendant's assertions of prejudice.

Here, defendant contends it is speculation that the jury could not see the restraints, and "suggests that the restraint virtually could not be missed, because of the limitations on natural movement and body language that would result from being chained to a chair." He further contends that "the impairment on [his] ability to make decisions about testifying shackled and in jail clothing and his ability to present his case through his own testimony may be hard to calculate, but impairment can hardly be denied." Thus, he argues, "[i]n light of the combined likely affects [*sic*] on the jury and on [defendant], it is reasonably probable [he] would have seen a different result."

Prejudice resulting from a trial court's error in imposing physical restraints on a defendant is reviewed according to whether it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of error. (*Duran*, *supra*, 16 Cal.3d at p. 296, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

10.

However, "[i]t is settled 'that courtroom shackling, even if error, was harmless if there is no evidence that the jury saw the restraints, or that the shackles impaired or prejudiced the defendant's right to testify or participate in his defense.'" (*Poore*, *supra*, 13 Cal.5th at pp. 288–289.) When there is no suggestion the jury saw the restraints, we will not presume prejudice without evidence the restraints hampered the defendant's ability to participate in the trial. (See *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 156; *People v. Anderson* (2001) 25 Cal.4th 543, 596.)

Here, defendant's arguments are based on speculation. The record does not support his contentions that the restraints were noticeable to the jury, or that they impaired his decisionmaking during trial. There is no indication on the record that he suffered any impairment while being restrained, nor did he ever voice such a complaint. Accordingly, as there is neither evidence on the record that the jury saw defendant's restraints, nor that they impaired or prejudiced his right to testify or participate in his defense, the trial court's order that defendant be restrained in the restraint chair did not prejudice defendant.

## DISPOSITION

The judgment is affirmed.