Filed 6/4/13  P. v. Farley CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM DEAN FARLEY,<br><br>Defendant and Appellant. | F064052<br><br>(Super. Ct. No. BF132954A)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Michael L. Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Gomes, Acting P.J., Poochigian, J. and Franson, J.

This is an appeal from a judgment entered after a jury trial. Defendant and appellant William Dean Farley contends the trial court prejudicially erred in ordering defendant shackled during trial. We conclude the trial court's determination was supported by the record and that, in any event, any error was not prejudicial. Accordingly, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

### A. *The Underlying Offenses.*

A deputy sheriff saw defendant driving a stolen truck early on July 13, 2010, and tried to detain him. Defendant led the deputy on a high-speed chase. Eventually, defendant wrecked the truck. The deputy found defendant walking nearby and arrested him. An amended information charged defendant with felony vehicle theft with prior convictions (count 1; Pen. Code, § 666.5, subd. (a)); felony receiving a stolen vehicle (count 2; Pen. Code, § 496d); felony driving in disregard of safety of persons while fleeing a peace officer (count 3; Veh. Code, § 2800.2); and failure to provide information after a property damage accident, a misdemeanor (count 4; *id.*, § 20002, subd. (a)). As to each of the felony counts, the amended information alleged three prior prison term enhancements (Pen. Code, § 667.5, subd. (b)) and one prior strike (Pen. Code, §§ 667, subds. (c)-(j); 1170.12, subds. (a)-(e)). The jury found defendant not guilty on count 1 and guilty on counts 2 through 4. In a bifurcated trial to the court sitting without a jury, the court found the enhancement allegations and the strike allegation to be true for counts 2 through 4. The court sentenced defendant to an operative prison sentence of nine years.

### B. *The Facts Concerning Shackling.*

In the 16 months leading up to the jury trial, defendant filed motions to represent himself (see *Faretta v. California* (1975) 422 U.S. 806) and for new counsel (see *People v. Marsden* (1970) 2 Cal.3d 118). In addition, proceedings were stopped on several

2.

occasions for examination of defendant's competency to stand trial and for treatment to restore competency. (See Pen. Code, §§ 1368, 1370.)

The case was set for jury trial beginning March 21, 2011. The matter was called for trial, the court (Judge Brownlee) heard motions in limine, and the matter was continued to the next day. The next morning, the court advised defendant that it had spoken to defense counsel and the prosecutor in chambers the day before, that the court had received information that defendant was "agitated about coming to trial," and that he had threatened various persons. After informing the court that he was being harassed at the jail but that he had not threatened the judge or potential jurors, defendant stated that if a prospective juror "disrespected" him by having "weird looks" on his face, defendant would not "take that" and the juror should "get the hell out of here." He continued: "I have no problem giving fair warning on anything, you know. And like I said, I don't raise my hands to do crime myself. I'm a second lieutenant in the New War Skinhead. Why should I raise my hand?" The court then advised defendant that the reason he was shackled to the floor was that the sheriff's department believed defendant was adept at escaping from handcuffs. Defendant acknowledged that was one of the skills he had learned in prison. Defendant then asked for a new attorney and, after a closed hearing on that request, the request was denied. Defense counsel then requested defendant's competency be reevaluated. The court suspended proceedings pending a competency examination

Subsequently, defendant was given the right to represent himself. When the case was next scheduled for trial on August 8, 2011, the prosecutor filed a motion in limine to determine whether defendant was likely to be so disruptive and obstructionist that self-representation should be precluded. Attached to this motion were 67 pages of jail incident reports, including incidents of threats to and assaults on staff, hiding of razor blades on defendant's person, injuries from attempts to hide razor blades, and self-injury. Of particular note, three of the reports involved threats and attempts to escape from

handcuffs, including one incident where defendant bent the handcuffs and was placed in side-bar restraints. Also attached to the motion was a copy of the prosecutor's letter to the clerk of court summarizing defendant's in-court behavior and expressing "great concern" for himself and other court personnel if defendant was permitted to move freely while representing himself. At a hearing on August 8, 2011, the court granted defendant's request for appointment of counsel and continued the trial until September 19, 2011.

After a further Penal Code section 1368 motion was denied on October 12, 2011, the matter was called for trial on October 27, 2011, and the trial court (Judge Brehmer) addressed the issue whether "some sort of restraints" were necessary for defendant during the trial. The court stated it was aware of "a multitude of events that have transpired involving [defendant] over the past year or so that he's been in custody," most recently an altercation between defendant and the in-court deputy sheriff at the October 12 hearing. Defendant responded that the deputy had assaulted him. The court said the deputy "probably thinks" defendant assaulted the deputy. After receiving assurances from defendant that he understood it was in his own interest to behave respectfully in front of the jury, the court stated that its tentative ruling was that "there is a manifest need for keeping the shackles on and also the cuffs." The court stated that defendant would be seated at a table with skirting, so the jury would not be aware of the restraints. It then permitted defense counsel to address the matter. Counsel said restraints would be "very prejudicial." He stated he had seen no behavior requiring restraints and that it would be "very difficult for [defendant] not to allow the jury to see the handcuffs, especially if he needs to write me a note or show me something or point to something in the transcript or the report." The court stated that it had "incident reports that I've reviewed. The most recent, I believe, is October 12th. And they're about an inch thick total." The court stated it would go off the record to "confer with our deputies as to any additional information they have." After the unreported discussion with the deputies, the court

4.

stated that it would "still" require restraints but that "it is important that [defendant be] able to communicate with his attorney." Accordingly, the court determined that defendant's writing hand would not be shackled. The court concluded: "And we'll see how things go. We can revisit this order as we proceed." The court then advised the attorneys that everyone would remain seated when the jury entered, so that attention would not be drawn to defendant. Subsequently, the court advised defendant that if he decided to testify in his own behalf, he would be permitted to take the witness stand when the jury was out of the courtroom, and that his hands would not be cuffed during the testimony. Defendant ultimately decided not to testify.

## DISCUSSION

We have set forth in some detail the circumstances surrounding the issue of shackling defendant because defendant's appellate brief focuses on a very narrow portion of the proceedings, creating a distorted account of the trial court's action. He then frames his contentions on appeal in the light of this distorted account.

Defendant contends the trial court had two "concerns," and that defendant's responses to the court resolved those concerns in a manner that satisfied the court. Because the court received these assurances and then conferred with law enforcement personnel off the record before announcing its final ruling on the issue of restraints, in defendant's view, the decision to shackle defendant "creat[ed] the appearance that a judicial function was impermissibly abdicated to law enforcement" during the off-the-record consultation with the deputies.

Defendant's contention mischaracterizes the record. The court stated early in the October 27, 2011, proceedings that it had reviewed an inch-thick stack of jail incident reports. The incident reports attached to the prosecutor's August 8, 2011, in limine motion, which apparently comprise a significant portion of the reports reviewed on October 27, amply support the court's tentative decision to require restraints. This decision was announced by the court prior to the off-the-record discussion with law

5.

enforcement personnel. The fact that the in camera discussion did not provide information that convinced the court not to require defendant be shackled during trial does not create the appearance that the initial decision, announced before the in camera discussion, was based in any way on statements made in camera by law enforcement personnel. Instead, the court's decision was made based on evidence in the record to which defendant did not object.

In this case, there is no indication in the record that the jury was aware that defendant was restrained, and the court went to some lengths to prevent the jury from learning this information. Accordingly, this case does not involve many of the due process issues addressed in cases such as *Deck v. Missouri* (2005) 544 U.S. 622, 634, and this court's opinion in *People v. Soukomlane* (2008) 162 Cal.App.4th 214, 230-231, where the retraints were visible to the jury. Nevertheless, because of the more subtle psychological effects on a defendant and possible impairment of a defendant's ability to communicate with counsel, a case-specific inquiry about escape or the safety of participants in the trial has long been required for shackling, even if the restraints are not visible to the jury. (See *People v. Harrington* (1871) 42 Cal. 165, 167-168; see also *Deck v. Missouri, supra,* 544 U.S. at p. 631.) Restraints are permissible upon a showing of reasonable justification (*id.* at p. 635) or "manifest need" (*People v. Duran* (1976) 16 Cal.3d 282, 290-291.) Here, the need for restraints was manifest, since the court had before it documentation of defendant's threats to jail staff, his concealment of razor blades on his person, and his attempts to injure himself.

It is not clear from the record whether the court at the October 27, 2011, jury trial had before it the reporter's transcript of the March 22, 2011, hearing concerning the issue of restraints. The transcript of that hearing is in the record on appeal, however, and it informs our consideration of the issue of prejudice. In the course of that hearing, defendant acknowledged that he had become skilled at escaping from handcuffs and he stated that he would be resentful of any jurors who disrespected him by having "weird

6.

looks" on their face.  Defendant threatened any such juror if the court did not remove the juror from the courtroom, although defendant said he would not have to raise his own hand against the juror because his gang subordinates would handle that for him.  The information from the March 22 hearing would be available to the trial court in any future proceedings in this case, and that information clearly would justify keeping defendant in restraints while in the courtroom.  Accordingly, even if we found the record before the court at the October 27 jury trial was somehow inadequate to justify restraints, any error in requiring restraints was not prejudicial, since there is no question a fully informed court would reach the result.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## DISPOSITION

The judgment is affirmed.