Filed 2/10/15  P. v. Croy CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C076444 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F5378) |
| v. | |
| WILLIAM DALE CROY, JR., | |
| Defendant and Appellant. | |

A jury found defendant William Dale Croy, Jr., guilty of failing to annually update his sex offender registration.  (Pen. Code, § 290.012.)[1]  The jury also found true the allegations that defendant was previously convicted of first degree burglary (§ 459), assault with a deadly weapon (§ 245, subd. (a)(1)), false imprisonment by violence with a deadly weapon (§§ 236 & 237), and sexual battery by restraint with a deadly weapon

---

[1] Undesignated statutory references are to the Penal Code.

1

(§ 234.4).  The trial court then sentenced defendant to a term of seven years in state prison.

On appeal, defendant contends the trial court unnecessarily shackled him during the jury trial and erred in finding his prior conviction—for assault with a deadly weapon—was a strike offense.  We shall affirm.

## BACKGROUND[2]

During a hearing on pretrial motions in March 2014, the following colloquy took place regarding defendant's clothing and the need for physical restraints:

"THE COURT:  Okay, I see that [defendant] is not in civilian or street clothes but is in jail blue clothes and he has manacles and I don't know what else, because I can't see.  [¶]  Uhm, what's the nature of your client's restraint, Counsel?

"[Defense Counsel]:  The nature of his restraints?

"THE COURT:  Yes.

"[Defense Counsel]:  He appears to be wearing handcuffs and—

"THE COURT:  Ankle mounts?

"[Defense Counsel]:  —ankle brace or ankle chains and a belly chain.

"THE COURT:  Okay.  And, so, first of all, why is your client in jail clothes?

"[Defense Counsel]:  He is in jail clothes at his own insistence.  I have spoken to him about it and advised him that he has the right to be in civilian clothes, that it's in his best interests to be in civilian clothes, that should the jury see him in jail clothes, uhm, it would be—negatively affect his case, and despite that, [defendant]—and additionally, I did provide civilian clothes to the jail yesterday to be provided to [defendant], uhm, for trial, and if I could have one moment to inquire.

---

[2]  The facts related to the crime for which defendant was convicted are not relevant to the issues on appeal.  Accordingly, we omit them from the opinion.

"([Defense counsel] and defendant conferred off the record.)

"[Defense Counsel]: And he was given the opportunity to wear the civilian clothes, but he has declined to do so.

"THE COURT: Okay. Is that true, [defendant]? You don't want the civilian clothes that were provided to you?

"THE DEFENDANT: Yes.

"THE COURT: Okay. Then I think that's the way it's gonna be. Uhm, anything else that you want to have me consider before we move into motions, et cetera?

"[Defense Counsel]: The question of the restraints, Your Honor.

"THE COURT: Okay. And are you objecting to the restraints, or do you simply want an explanation of why they're there?

"[Defense Counsel]: I am objecting to the—the belly chain and the, uhm, the handcuffs, Your Honor.

"THE COURT: Okay. Staff, who is knowledgeable about why [defendant] has belly chains, manacles and bracelets—

"THE BAILIFF: Your Honor, that would be myself, Deputy Backovich with the Shasta County Marshal's Office.

"THE COURT: Okay. Deputy, can you explain why you feel it's appropriate that he have these restraints?

"THE BAILIFF: Yes, Your Honor. This morning at approximately 0830 hours I spoke with [defendant's] attorney, . . . who informed me for safety reasons for, I believe, himself, court staff and everybody else, that [defendant] made a statement to the extent of creating a disturbance in court to delay the proceedings of the Court. [¶] There was nothing else provided to me as to what kind of a disturbance was going to be created from [defendant's attorney], so I chose to have [defendant] in legs and belly chains as he sits in front of you today, along with his choice of being in jail blues, as it's a standard practice for us to transport inmates in legs and bellies when they're dressed in blues.

3

"THE COURT: Okay. But independent of his clothe[s]—or clothing, based on what you were told in terms of an intention to create a disturbance and a delay, would that cause you, no matter what he was wearing, to feel the need for the restraint devices currently employed?

"THE BAILIFF: At this juncture, it would, Your Honor. My knowledge of [defendant's] past, his convicted past of using weapons and various crimes, as a security measure, I would choose to keep [defendant] restrained in the manner in which he is at this time, whether he was dressed in civilian clothes or not. [¶] I would be willing, however, I explained to [defendant's] attorney, to free his writing hand, which [defendant] informed me is his right hand, to take notes and give notes to his attorney as well as other things, like take a drink of water.

"THE COURT: Okay. Any further comments about the restraints?

"[Defense Counsel]: Uh, yes, Your Honor. [I] was advised by my supervisor when I received that information from [defendant] that I should share it with the security here at the courthouse. [¶] I've spoken to [defendant] further. He indicates that there was—he wasn't serious when he made the comment last week to me, and, uhm, I don't— I understand that he is waiving his right to wear civilian attire, however, I don't think that additionally should result in the jury seeing him shackled, and I think that the public—or the safety to the Court and counsel can be secured if he was to be, say, just restrained in such a way that the jury can't—can't see the chains themselves.

"THE COURT: Okay. And the People I assume are taking no position in this regard?

"[Prosecutor]: No position.

"THE COURT: Here's my concern, [counsel]: Your client can't just unring the bell with regards to a statement that he intends to create a disturbance in court. It's an undefined event, and it could be anything from a mild disturbance to a severe disturbance. We have no idea what he meant, and then when there's a consequence that

4

is restraint devices to simply say, well, I wasn't serious, doesn't undo the potential for that threat. [¶] Uhm, and, so, you know, I have a clear duty and fully accept my duty to make sure [defendant] has a fair trial, but at the same time I can't put my staff, you, [the prosecutor], the reporter, and prospective jurors at risk, and to simply conclude that, well, [defendant] is outmanned here, in the sense that we currently have two bailiffs, does not cure the problem. [¶] Uhm, and, so, I'm going to stick with what my security staff deems is appropriate. The alternative would be simply either a stun belt, which is problematic in itself, or stun band, or a simple leg brace which wouldn't prevent somebody from engaging in disturbance type of behavior. [¶] And, so, I'm going to make this decision on a day-to-day basis, but today's the day when the jury's going to first encounter your client. I will authorize a release of his right hand so he can take notes, provide you with notes. I think care needs to be taken in the nature of the writing instrument that he's provided. I'll expect my security staff to use care in that regard, but I think that's the way it is. [¶] [Defendant], it's very much in your interest that you not try to create a disturbance in this proceeding and not act out in the presence of jurors, since they'll be deciding the fundamental evidentiary facts in your case and deciding whether proof has been provided beyond a reasonable doubt."

Later, during the same hearing, the trial court spoke to defendant directly regarding the restraints:

"THE COURT: [Defendant], I want you to listen to what I'm saying to you, but I don't want you to respond. I want you to talk to your lawyer first before you do. But, I want to make sure that you appreciate that the combination of you being in jail clothes and having a handcuff on one hand and a belly chain and ankle bracelets is something that could potentially work against you with the jury, uhm, and that there may be an option that we can, uhm, find that would avoid that. [¶] And, so, I want you to talk to your lawyer . . . about that, because if you—if your view is, Judge, I don't care and I'm

5

fine and I just want to go forward the way it is, then so be it, but if—if you want to consider agreeing to dress out in civilian clothes, come back tomorrow in civilian clothes, then we might find a way to avoid jurors knowing that you're in custody and wearing such restraint.  [¶]  So, talk to [your attorney] and then he'll tell me how we're going to proceed.

"(Counsel and defendant confer off the record.)

"[Defense Counsel]:  I've spoken to [defendant] and advised him again that it's not in his best interests to be dressed in jail clothes and appear to be restrained during trial and it may affect the jury's—the way the jury perceives him and the decisions that they make, and he wishes to go forward attired as he is.

"THE COURT:  Okay."

## DISCUSSION

### I. Shackling

Defendant contends the trial court shackled him in court without an adequate showing of manifest necessity.  We disagree.

"The 'court has broad power to maintain courtroom security and orderly proceedings.'  [Citation.]  On appeal, its decisions on these matters are reviewed for abuse of discretion.  [Citation.]  Under California law, 'a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints.'  (*People v. Duran* (1976) 16 Cal.3d 282, 290-291.)  Similarly, the federal 'Constitution forbids the use of visible shackles . . . unless that use is "justified by an essential state interest"—such as the interest in courtroom security—specific to the defendant on trial.'  (*Deck v. Missouri* (2005) 544 U.S. 622, 624 [161 L.Ed.2d 953], italics omitted.)  . . .  'In deciding whether restraints are justified, the trial court may "take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at

6

trial." [(*Id.* at p. 629.)] These factors include evidence establishing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior.' [Citation.] Although the court need not hold a formal hearing before imposing restraints, 'the record must show the court based its determination on facts, not rumor and innuendo.' " (*People v. Virgil* (2011) 51 Cal.4th 1210, 1270-1271.)

On appeal, defendant argues that his threat to create a disturbance was too "nebulous" to warrant shackling. He further argues that the shackles were unwarranted because there was no evidence he had weapons in custody or used weapons in the crime for which he was going to trial, and that he had no history of creating a disturbance in the courtroom. None of these arguments are persuasive.

"An accused may be restrained, for instance, on a showing that he plans an escape from the courtroom or that he plans to disrupt proceedings by nonviolent means. Evidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained may warrant the imposition of reasonable restraints if, in the sound discretion of the court, such restraints are necessary." (*People v. Duran*, *supra*, 16 Cal.3d at pp. 292-293, fn. 11; see *People v. Valenzuela* (1984) 151 Cal.App.3d 180, 192.)

Defendant threatened to cause a "disturbance" in the courtroom in order to delay the proceedings. The law does not require such a threat to be more specific before a court may find restraints are necessary. Based on that threat, as well as defendant's record of committing violent crimes, the bailiff chose to put defendant in restraints. The trial court properly relied on those circumstances in exercising its discretion and ordering defendant to remain shackled during the trial. (See *People v. Gamache* (2010) 48 Cal.4th 347, 367; see also *People v. Livaditis* (1992) 2 Cal.4th 759, 774 ["not necessary that the restraint be based on the conduct of the defendant at the time of trial"].)

7

Defendant also contends the trial court abused its discretion by not considering alternate means of restraining defendant, thereby abdicating its decisionmaking responsibility to security personnel. Defendant's contention is belied by the record. The trial court expressly considered, but rejected, restraining defendant with a stun belt, stun band, or a leg brace. The court also made repeated attempts to persuade defendant to wear the civilian clothes he was offered, which the court said would make it easier to hide the restraints, but defendant insisted on wearing his prison garb. On this record, we find no abuse of discretion.

## II.  Prior Strike Conviction

Defendant also contends there was insufficient evidence to support a finding that his prior conviction for assault with a deadly weapon was a strike conviction. In support of his contention, defendant argues that "assault with a deadly weapon is a strike only if ' . . . the defendant personally used a dangerous or deadly weapon,' " and there is no evidence defendant used a dangerous or deadly weapon in committing the assault for which he was previously convicted. Regardless of whether the record supports a finding that defendant personally used a dangerous or deadly weapon during the assault for which he was convicted, defendant is wrong about the law.

Section 1192.7, subdivision (c)(31) states that "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245" is a serious felony. Thus, the statute does not require the People to prove defendant used a dangerous or deadly weapon during the assault.

Defendant thus argues that section 1192.7, subdivision (c)(31) "deals only with various assaults upon a peace officer or firefighter." Because there is no evidence defendant was convicted of assaulting a peace officer or firefighter, he contends this subdivision does not apply to him. This argument is not supported by any authority and

8

is contradicted by the plain language of the statute.  (*People v. Fox* (2014) 224 Cal.App.4th 424, 434, fn. 8 ["It is undisputed that assault with a deadly weapon . . . *is* a strike offense.  (§ 1192.7, subd. (c)(31).)"].)  Accordingly, the argument is not only misguided, it is frivolous.

## DISPOSITION

The judgment is affirmed.

           BUTZ         , J.

We concur:

      RAYE        , P. J.

      BLEASE      , J.