Filed 5/27/15  P. v. Figueroa CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B247795 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA083486) |
| v. | |
| RODRIGO MELGAR FIGUEROA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Victor Wright, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Rodrigo Figueroa appeals from a judgment following his jury conviction of two counts of lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a))[1] and one count of continuous sexual abuse (§ 288.5, subd. (a)). Appellant contends the conviction on count 1, which was based on an act allegedly committed in December 2005, is not supported by substantial evidence, and the court inadequately addressed the jury's question on that count, in violation of his right to due process. Appellant also contends the court placed unreasonable limitations on jury voir dire, failed to dismiss biased jurors for cause, and refused to grant an additional peremptory challenge, thus depriving appellant of his right to an unbiased jury. Appellant claims the living conditions in jail caused him to appear unkempt and exhausted during trial, and the court deprived him of the right to a fair trial by failing to take measures to ameliorate the situation. Finding no reversible error, we affirm the judgment.

**FACTUAL AND PROCEDURAL SUMMARY**

Appellant's granddaughter Cindi M. moved to California with her two sisters, Emma and Stephanie, in 2005, after their mother died in Guatemala. At the time, the girls were nine, seven and three years old respectively. They stayed with their aunt Nora C. at a trailer park in Inglewood, while their grandparents were in Guatemala arranging the mother's funeral. Appellant returned to California in December 2005, and the girls spent one night with him at the grandparents' mobile home in the same trailer park. All slept in the same bed. Cindi woke up to find appellant touching her chest underneath her clothes and rubbing his fingers over her vagina. He stopped when she asked him to, and told her not to say anything.

The girls' grandmother returned in January 2006, and the girls moved in with the grandparents. Towards the end of 2006, appellant asked Cindi to help him collect scrap metal on Saturdays. After several months, he began French kissing her forcibly. When she resisted, he would get angry, call her names, and threaten to send her back to

---

[1] Statutory references are to the Penal Code.

2

Guatemala if she told anyone. This behavior continued on most Saturdays through July 2008.

On a Sunday in July 2008, appellant laid on top of Cindi in her bed, held her hands above her head, and tried to kiss her without success because she kept wiggling away. That evening Cindi told her grandmother and her aunt Jeanette M. what had happened, but they did not believe her. Nonetheless, Cindi was sent to live with her aunt Jeanette across the street from her grandparents. Appellant was allowed to visit, which made Cindi uncomfortable because he would question why she had told on him when all he had done was fall in love with her. Several weeks later, Cindi was sent to live with relatives in Guatemala and then Mexico.

In June 2009, appellant brought Cindi back to California. He started taking her along to collect scrap metal again, and resumed his attempts to forcibly kiss her. On two occasions, he also touched her chest. Cindi told her grandmother, who accused her of "looking for it," yet sent Cindi's sister Emma to accompany them in the hope that appellant would show restraint in Emma's presence. Appellant flirted with Cindi in front of Emma, telling Cindi she would be his new wife. He believed the Bible allowed incest and told Cindi they would get married and have children. Emma recalled intervening on one occasion when appellant tried to kiss Cindi. Appellant scolded Emma for answering back, warned her not to tell her grandmother, and swung at her while driving.

Police were called in June 2011 after Cindi had an altercation with appellant. She told one of the responding officers that appellant thought of her as a girlfriend and had tried to kiss her several times. She denied he had touched her inappropriately and claimed not to be afraid of him. The officers gave appellant a warning. Appellant moved to another mobile home and then spent several months in Guatemala.

The day after his return to California in February 2012, appellant took Cindi and Emma on an errand run. After he raised his voice and hand at Cindi at a post office, the girls went to the Inglewood Police Department. There, Cindi reported that appellant had kissed her, touched her chest, and penetrated her vagina with his fingers. Cindi's grandmother admitted knowing her husband had kissed Cindi and touched her breasts.

3

The grandmother reported that when confronted by her, appellant had excused his conduct as being due to his infatuation with his granddaughter, which he believed the Bible permitted.

Appellant was charged with committing a lewd act between December 1 and December 31, 2005 (§ 288, subd. (a), count 1) and between January 1, 2008 and December 31, 2008 (§ 288, subd. (a), count 3), and with engaging in continuous sexual abuse between January 1, 2006 and December 31, 2007 (§ 288.5, subd. (a), count 2).[2] As to all counts, it was alleged that the victim, Cindi, was a child under the age of 14. As to count 1, substantial sexual conduct was alleged, which if found true would render appellant ineligible for probation. (§ 1203.066, subd. (a)(8).)

The jury convicted appellant on all counts. The court imposed the mid-term of 12 years on count 2, and one-third the mid-term of six years on each of the other two counts, for a total of 16 years. Appellant received 465 days of presentence credits and was assessed various fines and fees.

This appeal followed.

## DISCUSSION

### I

Defendant contends the evidence does not support his conviction on count 1 because Cindi's testimony that she and her sisters spent a night in appellant's bed in December 2005 was contradicted by her sister Emma and aunt Nora. He also claims it "makes no sense" that his most outrageous conduct—touching Cindi's vagina—occurred so early in the relationship and was never repeated.

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] 'Conflicts and even testimony which is subject to justifiable suspicion

_____

[2] At trial, the period alleged as to count 2 was extended to May 31, 2008; the period as to count 3 was limited to June 1, 2008 through September 30, 2008.

do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

To be deemed improbable, testimony accepted by the trier of fact must be "'so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt.' [Citation.]" (*People v. Hovarter* (2008) 44 Cal.4th 983, 996.) The falsity of such testimony """"must be apparent without resorting to inferences or deductions." [Citations.]'" (*People v. Ennis* (2010) 190 Cal.App.4th 721, 728.)

Appellant relies on his trial counsel's argument that the pattern of abuse described by Cindi was atypical because it deescalated from "molestation" to "much more minor" behavior over the years. Defense counsel's belief is not evidence (*People v. Breaux* (1991) 1 Cal.4th 281, 313 [it is axiomatic that argument of counsel is not evidence]), and the argument that the circumstances of this case are unusual is speculative. But even assuming they are unusual, """"testimony which merely discloses unusual circumstances'""" is not inherently improbable on that account. (*People v. Maciel* (2013) 57 Cal.4th 482, 519.)

Appellant's claim that Cindi's testimony about the sleepover was "contradicted by the testimony of all other witnesses, which was uncontroverted. . . ." overstates the certainty of that testimony. Emma, who had been seven years old in 2005, testified she did not remember a lot from that period, and did not know if she and her sisters had slept over at their grandfather's place. Appellant's claim that Emma "was very clear that the sisters never spent the night at appellant's home when their grandmother was not there" mischaracterizes Emma's testimony that she did not remember and did not know whether a sleepover occurred.

5

Nora C., who testified in appellant's defense, denied her nieces stayed overnight at appellant's home in December 2005. On cross-examination, her testimony was impeached in several ways. She admitted her memory of the period following her sister's death was not very good. She also admitted being close to her father and hurt to see him on trial, as well as learning before the preliminary hearing that the allegations against him were based on conduct occurring in his residence in 2005, while Cindi was in her care. The jury was instructed that memory deficits, as well as bias and interest in the litigation, are factors bearing on a witness's credibility. It cannot be said that Nora C.'s testimony was unassailable.

Resolving conflicts in the evidence and determining the witnesses' credibility is the exclusive province of the jury. (*People v. Elliott*, *supra*, 53 Cal.4th at p. 585.) On appeal, we may not reweigh the evidence, nor may we draw from it inferences favorable to appellant. (*People v. Ennis*, *supra*, 190 Cal.App.4th at p. 728.) Therefore, we resolve the sufficiency of the evidence issue against him.

II

During deliberations, the jury asked for a readback of Cindi's testimony pertaining to count 1, and Emma's and Nora C.'s testimony about "the sleepover." Before receiving a readback of all pertinent testimony, the jury sent out the following question: "If we doubt the scenario of the sleep over but feel that some act may have occurred during the times of count 1—can we find the defendant guilty even if we think that there is reasonable doubt that any sleepover ever occurred, be [sic] he may have had access in some other way or scenario from Dec 1st, 2005 to Dec 31, 2005?"

Defense counsel's proposed response read: "The only evidence of a touching in violation of Penal Code section 288 (a) in relation to count 1 is that if it occurred, . . . it occurred while the victim was spending the night, [or] a portion of the night in defendant's bed, if you have a reasonable doubt as to such a scenario ever occurred, you must find defendant not guilty of count 1." The proposed response incorporated language offered by the prosecution, which read: "You must base your decision only on the evidence produced at trial," to which defense counsel added, "and may not speculate as to

some other [incident] of which there was no evidence." The court refused to "speculate as to what jurors are doing or thinking" or "interfere . . . with their deliberations," and rejected these proposals. Instead, it instructed the jury: "If you all have a reasonable doubt as to any essential element of count 1, then the defendant is entitled to a verdict of not guilty." The jury received additional readbacks, and after short deliberations returned a guilty verdict on all counts.

Appellant argues the court should have instructed the jury, according to defense counsel's request, that acquittal on count 1 was in order if it had reasonable doubt that the sleepover described by Cindi actually occurred. Alternatively, he argues the court should have given the jury a unanimity instruction.

Under section 1138, the court must respond to the jury's request for information "'on any point of law arising in the case[.]' . . . Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Cittaion.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) In responding to a jury inquiry, "the court must not appear to be an advocate, either endorsing or redirecting the jury's inclination." (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1331.)

Appellant incorrectly assumes the jurors could not convict him unless they believed the circumstances under which the lewd act alleged in count 1 occurred. Even though they may bear on the victim's credibility, "the particular details surrounding a child molestation charge," such as when and where the molestation occurred, "are not elements of the offense and are unnecessary to sustain a conviction. [Citations.]" (*People v. Jones* (1990) 51 Cal.3d 294, 315–316.) The jury had been instructed that it could believe "all, part, or none of any witness's testimony." It was not required to reject all of Cindi's testimony about the 2005 incident if it disbelieved that it occurred at night. It would be speculative to infer from the jury's question that the jury had rejected Cindi's testimony on count 1 in its entirety, and the court was justifiably concerned about drawing such an inference.

7

The court correctly directed the jury's attention to the essential elements of the crime alleged in count 1. The jury previously had been instructed that a lewd act (§ 288, subd. (a)) required willful touching of a child's body for purposes of sexual arousal and that substantial sexual conduct (§ 1203.066, subd. (a)(8)) required either "oral copulation or masturbation of either the child or the perpetrator." The jury found the allegation of substantial sexual conduct to be true. That finding indicates the jury credited Cindi's account that appellant rubbed his fingers over her vagina, which was the only evidence the prosecution advanced in support of the special allegation.

Appellant's argument that a unanimity instruction was required in this case also is incorrect. As appellant acknowledges, there was no evidence of more than one act that would constitute the charged offense. The requirement of jury unanimity "does not extend to the minute details of how a single, agreed-upon act was committed. [Citation.]" (*People v. Mickle* (1991) 54 Cal.3d 140, 178.)

The court did not abuse its discretion in responding to the jury's question.

III

Appellant argues the court's time limitation on voir dire and denial of his request to excuse two biased prospective jurors for cause or to exercise an additional peremptory challenge violated his right to an unbiased jury. We disagree.

"A trial court's ruling on a challenge for cause is reviewed for abuse of discretion. [Citation.] We will uphold the court's decision """"if it is fairly supported by the record, accepting as binding the trial court's determination as to the prospective juror's true state of mind when the prospective juror has made statements that are conflicting or ambiguous." [Citations.]"" [ Citations.] When there is no inconsistency or ambiguity, we will uphold the court's ruling if it is supported by substantial evidence. [Citation.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 50.)

Our review of the reporter's transcript of the jury voir dire, including the sealed portions of sidebar conferences with individual jurors, indicates juror No. 36 expressed doubt he could apply the presumption of innocence in this case and juror No. 52 expressed bias favoring the child victim. The jurors had either relatives or acquaintances

8

who had been victims of sexual abuse. But juror No. 36 eventually agreed to follow the law and vote to acquit if the prosecution did not prove its case. Juror No. 52 repeatedly represented that her experiences cut both ways, and that she would try to be objective and keep an open mind. Since the jurors made conflicting statements during voir dire, we defer to the trial court's determination as to their true state of mind.

In any event, appellant's right to a jury trial would be affected only if a juror that should have been removed for cause was allowed to sit on the jury. (*People v. Black* (2014) 58 Cal.4th 912, 917.) Appellant has made no such showing. Defense counsel used two of his peremptory challenges to excuse jurors Nos. 36 and 52, so neither sat on the jury. Nevertheless, counsel expressed his general dissatisfaction with the final composition of the jury, in particular with juror No. 1, whose daughter was the same age as the victim. The court denied his request for an additional peremptory challenge. Appellant does not argue that the fact juror No. 1 had a daughter of a certain age in itself made him removable for cause, and there is no other evidence any sitting juror was actually biased against appellant.

Appellant argues the court's limitation on general voir dire prevented the defense from uncovering juror bias. The trial court has discretion to limit voir dire, and reversal of a conviction is warranted only when the limitation falls outside the bounds of reason and results in a "'miscarriage of justice.' [Citation.]" (*People v. Navarette* (2003) 30 Cal.4th 458, 486.) After an initial voir dire by the court, counsel was allowed to examine the jurors. The court interrupted defense counsel's questions about potential prejudice against appellant due to his national origin and outward appearance, advising him that the 20 minutes for general voir dire were up before counsel could register the jurors' answers to his questions. Over eight days of jury selection, the prospective jurors were repeatedly questioned regarding improper biases based on ethnicity, nationality, physical appearance and other similar characteristics. Defense counsel's question was a variation of the general bias question the court asked all prospective jurors. To the extent the question was cumulative, the court's interruption did not deprive the defense of any valuable information about jury bias or result in a miscarriage of justice.

Appellant's suggestion that the court's 20-minute limitation on counsel's general voir dire prevented the defense from eliciting juror bias is speculative. There is no indication that defense counsel intended to ask any further questions when he was interrupted, or that the court prevented him from thoroughly questioning jurors whose answers showed potential bias. We cannot say that the eight-day jury selection process was so rushed or inadequate as to result in a trial that was fundamentally unfair. (See *People v. Bolden* (2002) 29 Cal.4th 515, 538.)

IV

Appellant argues his rights to due process and a fair trial were violated because jail authorities had deemed him to be a danger to himself and had deprived him of a mattress to sleep on and of shaving equipment. That caused him to appear in court unshaven and exhausted. Appellant faults the court for not taking adequate measures to ameliorate his situation.

Appellant analogizes his case to cases where a defendant was tried in prison garb or in restraints. Compelling a defendant to stand trial wearing jail clothes is indeed a violation of the rights to a fair trial, due process, and equal protection because it undermines the presumption of innocence where a defendant is too poor to post bail. (*Estelle v. Williams* (1976) 425 U.S. 501, 503–505; *People v. Meredith* (2009) 174 Cal.App.4th 1257, 1262–1263.) The use of visible restraints is similarly prohibited absent a determination that the defendant poses a safety or flight risk. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1270–1271.)

The comparison does not hold here because appellant was neither restrained during trial, nor was he tried in jail clothes. There is no indication in the record that appellant's appearance signaled to the jury that he was in custody, or that he was violent. The court advised the jurors appellant was not clean shaven for reasons beyond his control, without divulging that he was in jail. It requested that appellant's mental state be reevaluated by jail authorities, and halfway through trial, defense counsel acknowledged appellant had been given a mattress on which to sleep. The record shows the court was solicitous of defendant's complaints and made reasonable attempts to ameliorate his

housing situation. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1004 [no abuse of discretion where court was receptive of defendant's complaints and made unsuccessful attempts to address them].)

Appellant contends the court was required to independently assess his mental state and compel court security to allow him to shave in the courthouse. The cases on which he relies hold that the court must independently assess the need for restraints during trial and may not delegate that decision to court security personnel. (*People v. Vance* (2006) 141 Cal.App.4th 1104, 1112, and cases cited.) Here, the court was told by courthouse security that "they cannot provide appellant with shaving equipment," not even with "a single-blade razor." The record does not make clear whether shaving equipment was unavailable for safety or other reasons.

Even assuming the court should have insisted that appellant be provided with shaving equipment, it is doubtful that the prejudicial effect of growing stubble can be compared to that of being physically restrained during trial. The use of restraints is particularly prejudicial because it implies the defendant is a violent person. (*People v. Duran* (1976) 16 Cal.3d 282, 290.) Growing a beard carries no such stigma. Nor is there any evidence that appellant's appearance had any effect on the jury or on his ability to participate in his defense. (Cf. *People v. Anderson* (2001) 25 Cal.4th 543, 596 [erroneous use of restraints harmless if no evidence jury saw them during trial or they impaired defendant's right to participate in defense].)

We find no prejudicial abuse of discretion and no reversible constitutional error under the circumstances.

V

As we have rejected appellant's individual claims of error, we also reject his contention that the cumulative effect of the errors requires reversal. (See *People v. Bolin* (1998) 18 Cal.4th 297, 335.)

11

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


COLLINS, J.