Filed 3/17/16  P. v. Gazcon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID GAZCON, JR.<br><br>    Defendant and Appellant. | D069281<br><br><br>(Super. Ct. No. INF054356) |

APPEAL from a judgment of the Superior Court of Riverside County, Richard Todd Fields, Judge.  Affirmed.

Boyce & Schaefer and Laura Schaefer for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland, Scott C. Taylor and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

David Gazcon, Jr. appeals from a judgment entered after a jury convicted him of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and active participation in a

---

[1]    Statutory references are to the Penal Code.

criminal street gang (§ 186.22, subd. (a); count 2). As to the murder conviction, the jury found true the allegations that Gazcon (1) attempted to kidnap the victim within the meaning of section 190.2, subdivision (a)(17)(B) (§ 207); (2) personally and intentionally discharged a firearm causing great bodily injury and death to another person not an accomplice within the meaning of section 12022.53, subdivisions (d) and (e); (3) intentionally killed the victim while Gazcon was an active participant in a criminal street gang and to further its activities (§ 190.2, subd. (a)(22)); and (4) committed the offense for the benefit of the street gang within the meaning of section 186.22, subdivision (b)(1)(C). The trial court sentenced Gazcon to life without the possibility of parole on count 1, plus a consecutive term of 25 years to life based on the personal use of a firearm enhancement. The court also sentenced him to one year four months on count 2, which it stayed under section 654.

Gazcon's sole contention is that the court erred by ordering him to wear shackles during the trial instead of a less restrictive stun belt, and because the shackles were visible to the jury, the error was prejudicial. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2004, Gazcon and a fellow gang member drove Gabriel Lima out to the desert where Gazcon fatally shot Lima in retaliation for him stealing Gazcon's money and stereo.

Before trial, deputy sheriffs restrained Gazcon while transporting him to court because four months earlier, while Gazcon awaited trial in jail, he and three other inmates physically assaulted four correctional officers. During the incident, Gazcon took

2

possession of an officer's taser and used it against the other officers.  A few weeks after the incident, Gazcon wrote a letter threatening his former girlfriend's current lover:  "I'm going to cut your fucken [*sic*] head off.  . . .  This is one of my gun's [*sic*] 8 years ago, can't wait to show you my new one."  The letter included photographs of a handgun and a deceased male body.

On the court's own motion, it tentatively ruled Gazcon should be restrained during trial, reasoning that if Gazcon could take a taser from an officer in the secure confines of a jail, he likely could take a gun from an officer in a less secure courtroom.  At the hearing, defense counsel said Gazcon preferred shackles that would not be visible to the jury.  The court stated that based on its prior experience the shackles would not be visible to the jury.

The next day, Gazcon changed his position and requested he wear a stun belt on his leg instead of shackles, which might be visible to the jury.  Although a deputy sheriff interjected during the proceedings that a stun belt alone "was an option," the court denied Gazcon's request, concluding the shackles were less restrictive than the stun belt and would provide a greater measure of safety during trial:  "I feel like this is a lesser means of accomplishing the same goal.  Actually I think it will lead to the likelihood of less opportunity for escape.  Because if he has the REACT [Remote Electronically Activated Control Technology] belt, he could jump up and take off running.  He might fight through it."

During jury selection, defense counsel renewed her objection to the shackles:  "I took the liberty of sitting in various seats of this first row to your Honor's right, and the

3

second row and parts of the third row, and each one of those seats has an absolute dead-on view of Mr. Gazcon's leg shackles." The court did not alter its order but replied: "That may be. But it certainly is a different view when you're seated there versus when you're not seated there. Because depending on the angle, your legs are parallel with the gentleman's legs. Depending, they may or may not see the chains. I'm not sure. I think that's probably reasonable." During the entire trial, the court took the additional precaution of requiring everyone in the courtroom to remain seated when the jury entered so as not to draw attention to Gazcon's shackles.

At defense counsel's request, the court read CALCRIM No. 204 to the jury: "The fact that physical restraints have been placed on the defendant is not evidence. Do not speculate about the reason. You must completely disregard this circumstance in deciding the issues in this case. Do not consider it for any purpose or discuss it during your deliberations."

Following his convictions, Gazcon filed a motion for new trial, arguing that his visible shackles had prejudiced him and deprived him of due process. Gazcon claimed he "was unable to humanize himself in front of the jurors" because of his "complete lack of movement," "there was no way to know whether some of the jurors actually *saw* the shackles and chains," and because defense counsel could see the shackles during jury selection, actual jurors could have seen them during trial. Defense counsel argued she "was forced" to request a jury instruction "out of an abundance of caution," thus alerting the jury that Gazcon had worn shackles. The court denied the motion, relying on its pretrial ruling.

4

DISCUSSION

Gazcon contends the court abused its discretion by denying his request to wear a stun belt rather than shackles during trial, arguing the court erroneously assumed "the stun belt was a less secure option for preventing [his] escape and harm to the trial participants," and he was prejudiced because the shackles were visible to the jury.

A. *Legal Principles/Standard of Review*

The California Supreme Court has long held that placing physical restraints on a defendant during trial "without evident necessity . . . prejudicially affect[s] his constitutional rights of defense." (*People v. Duran* (1976) 16 Cal.3d 282, 288 (*Duran*), quoting *People v. Harrington* (1871) 42 Cal. 165, 168.) Within the bounds of due process requirements, a trial court may exercise its discretion to order the use of physical restraints during trial. (*Deck v. Missouri* (2005) 544 U.S. 622, 629; *People v. Gamache* (2010) 48 Cal.4th 347, 367 (*Gamache*).)

"[A] defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints." (*Duran*, *supra*, 16 Cal.3d at pp. 290-291.) When making its determination, the trial court may " 'take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.' " (*Gamache*, *supra*, 48 Cal.4th at p. 367, quoting *Deck v. Missouri*, *supra*, 544 U.S. at p. 629.) "These factors include evidence establishing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior." (*Gamache*, at p. 367.)

A trial court cannot adopt a blanket policy to impose physical restraints on defendants and cannot base its decision on the charges alone. (*Duran*, *supra*, 16 Cal.3d at p. 293.) The determination must be made on a case-by-case basis and be "most suitable for a particular defendant in view of the attendant circumstances." (*Id.* at pp. 291, 293.) If the record shows restraints are necessary, the court "should select the least obtrusive method that will be effective under the circumstances." (*Gamache*, *supra*, 48 Cal.4th at p. 367.) We review the court's decision to impose physical restraints on a defendant for abuse of discretion. (*Duran*, at p. 291.)

The trial court abuses its discretion where the record lacks a showing "of violence or a threat of violence or other nonconforming conduct." (*Duran*, *supra*, 16 Cal.3d at p. 291.) A formal hearing is not required to show manifest need for physical restraints, but "the record must show the court based its determination on facts, not rumor and innuendo" (*People v. Stevens* (2009) 47 Cal.4th 625, 633) and did not simply "defer decisionmaking authority to law enforcement officers." (*Id.* at p. 642.)

If a manifest need for physical restraints exists but the jury can see the restraints during trial, the court must instruct the jury not to take the restraints into consideration in any way during deliberations. However, if the restrains are not visible to the jury, no instruction should be given unless the defendant requests it. (*Duran*, *supra*, 16 Cal.3d at pp. 291-292.) Furthermore, the use of physical restraints during trial "even if error, [is] harmless if there is no evidence that the jury saw the restraints, or that the shackles impaired or prejudiced the defendant's right to testify or participate in his defense." (*People v. Anderson* (2001) 25 Cal.4th 543, 596.)

In *People v. Mar* (2002) 28 Cal.4th 1201 (*Mar*), the California Supreme Court held the use of stun belts is subject to the same limitations set forth in *Duran* as traditional methods of physical restraints. (*Mar*, at p. 1205.) A trial court should not order the use of a stun belt over traditional physical restraints if the court finds "the device more onerous than necessary to satisfy the court's security needs." (*Id.* at p. 1206.)

*Mar* also recognized that stun belts may impose additional health concerns. (*Mar*, *supra*, 28 Cal.4th at p. 1228.) "In light of the substantial physical harm that may result when the device is activated, any significant doubt as to the reliability of the stun belt renders even more suspect the general assumption that a stun belt is a less onerous or restrictive alternative to traditional security measures." (*Id*. at p. 1229.) If a trial court determines a stun belt is appropriate, it must first "require assurance that a defendant's medical status and history has been adequately reviewed and that the defendant has been found to be free of any medical condition that would render the use of the device unduly dangerous." (*Id.* at pp. 1205-1206.) The trial court "may approve the use of a stun belt only if it determines that the use of the belt is safe and appropriate under the particular circumstances." (*Id.* at p. 1230.)

B. *Analysis*

On our review of the record, we conclude the trial court did not abuse its discretion when it ordered Gazcon to wear shackles instead of a stun belt during trial. "To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that it 'falls outside the bounds of reason.' A merely debatable

7

ruling cannot be deemed an abuse of discretion." (*People v. Bryant* (2014) 60 Cal.4th 335, 390.)

At the pretrial hearing, the court reviewed the sheriff's department report describing the incident at the jail and Gazcon's threatening letter, and it found there was a "manifest need" for physical restraints because Gazcon had engaged in violent and "nonconforming conduct" (*Duran*, *supra*, 16 Cal.3d at pp. 290-291) that posed a significant safety concern for the court. Gazcon does not dispute this finding.

The court also properly exercised its discretion in determining that using shackles was the least restrictive method to address its security concerns. Gazcon initially preferred the shackles because he was "concerned about any accidental activation" of the stun belt. After trying on the shackles, he changed his mind and requested the stun belt, which he believed would not psychologically impact him. At that time, Gazcon considered the stun belt "the more severe restraint" but made the request anyway. On appeal, Gazcon has changed his position and now argues the stun belt would have been less restrictive than the shackles. Nonetheless, Gazcon's preference for the stun belt was not determinative. The court must give "considerable weight" to Gazcon's perspective only to the extent that it satisfies the court's legitimate security concerns. (*Mar*, *supra*, 28 Cal.4th at p. 1206.) Here, the court stated the stun belt would not eliminate the possibility of escape or violent incident because Gazcon could "jump up" or "fight through it." The court reasonably concluded that shackles were the least restrictive option based on its prior experience and the inherent dangers associated with the use of stun belts.

8

C. *Any Presumed Error was Harmless*

Though we have concluded the court did not abuse its discretion in ordering Gazcon to wear shackles during the trial, if we assumed error, it would nevertheless be harmless. Although Gazcon asserts the shackles were visible to the jury, there is no evidence that the jury actually saw them. Defense counsel's "experiment" during jury selection was not conclusive on the question of whether the jury saw the shackles. The California Supreme Court has "consistently found any unjustified or unadmonished shackling harmless where there was no evidence it was seen by the jury." (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 583-584.) In any event, the jury was instructed with CALCRIM No. 204 to completely disregard the defendant's physical restraints. "[T]he general rule is that on appeal we must assume the jury followed the court's instructions and admonitions." (*People v. Frank* (1990) 51 Cal.3d 718, 728.) The court also ordered those in the courtroom to remain seated when the jury was present to minimize undue attention to Gazcon's restraints. Under these circumstances, it is not reasonably probable Gazcon would have obtained a more favorable verdict had he worn the stun belt during trial. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McINTYRE, Acting P. J.

IRION, J.