Filed 10/13/25  P. v. Brady CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BILL BRADY,<br><br>    Defendant and Appellant. | 2d Crim. No. B341138<br>(Super. Ct. No. 24PT-00564)<br>(San Luis Obispo County) |

Bill Brady appeals from the trial court's order extending his civil commitment after a jury found he qualified as an offender with a mental health disorder.  (Pen. Code, § 2970 et seq.)[1]  He contends the trial court abused its discretion when it required him to wear restraints during his jury trial.  We affirm.

*Facts and Procedural Background*

In August 2024, the San Luis Obispo County District Attorney filed a petition to extend appellant's involuntary commitment pursuant to section 2970.

_____

[1] All further statutory references are to the Penal Code.

In September 2024, at a hearing prior to trial, the prosecution entered several exhibits into evidence, including appellant's mental health, treatment, and disciplinary records. The prosecution described several incidents of unprovoked violence going back to 2021 and requested that appellant be restrained during the proceedings. Defense counsel argued that shackling appellant would prejudice the jury.

The trial court also heard from the correctional sergeant who stated that custody staff had "significant concerns with . . . safety . . . if [appellant] were to come out of his restraints." The sergeant indicated that he had spoken to staff at the California Department of Corrections and Rehabilitation (CDCR) where appellant was currently residing. Appellant was described by staff as "highly assaultive" and was currently assigned the "highest level security." Appellant had also engaged in several batteries on a peace officer and one inmate, with his most recent act of violence occurring just two months prior to trial. The sergeant stated, "I believe taking [appellant] out of restraints would pose significant risk to defense, prosecution, staff and the public."

After some discussion and considering the evidence presented, the trial court found appellant created a substantial risk based on his history of assault and ordered that he be shackled.

At trial, Dr. Sylvia Torrez, a psychologist at the California State Prison—Sacramento (CSPS) testified that appellant suffered from a severe mental disorder, specifically schizoaffective disorder bipolar type. His symptoms, which included psychosis, hallucinations, religious delusions, and disorganized thinking, were not in remission. He had "limited"

insight into his illness and represented a danger to others in the community if released.  Dr. Torrez explained that over a two-year period—from late 2021 to April 2023—appellant had engaged in "32 acts of violence or aggression" toward his peers and hospital staff.  After he was transferred to CDCR due to safety concerns, appellant continued to engage in assaultive behavior as documented in appellant's CDCR Rules Violation Report (RVR) history.  Dr. Torrez opined that appellant's assaultive behavior was driven by his mental illness and was an aggravating factor in three out of five of his recent violent acts.

Appellant took the stand in his own defense.  He testified that he suffered from "mild psychosis" but did not believe he had schizoaffective disorder.  He acknowledged that he "randomly" assaulted other patients and staff but said it was because of the "powers and principalities" that coerced him to do so.

The jury found appellant was an offender with a mental health disorder pursuant to section 2970.

*Discussion*

Appellant contends the trial court abused its discretion when it ordered that he be restrained during his jury trial because his past conduct did not establish a manifest need for such restraints.  We disagree.

"A trial court has broad power to maintain courtroom security and orderly proceedings, and its decisions on these matters are reviewed for an abuse of discretion." (*People v. Simon* (2016) 1 Cal.5th 98, 115 (*Simon*).)  However, that discretion must yield to principles of due process.  (*Ibid*.)  "'Under California law, "a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such

3

restraints. . . .'" (*People v. Poore* (2022) 13 Cal.5th 266, 285 (*Poore*); *People v. Duran* (1976) 16 Cal.3d 282, 290-291 (*Duran*).) "'Similarly, the federal "Constitution forbids the use of visible shackles . . . unless that use is 'justified by an essential state interest'— such as the interest in courtroom security—specific to the defendant on trial." [Citation.] . . .'" (*Poore,* at p. 285.)

No formal hearing is required. However, "when the use of restraints is based on conduct of the defendant that occurred outside the presence of the trial court, sufficient evidence of such conduct must be presented on the record so that the court may make its own determination of the nature and seriousness of the conduct and whether there is a manifest need for such restraints." (*Simon, supra,* 1 Cal.5th at p. 115; *People v. Mar* (2002) 28 Cal.4th 1201, 1226.) "The court may not . . . merely rely on the judgment of law enforcement or court security officers or the unsubstantiated comments of others. [Citation.] The court's determination must be based on facts, not rumor or innuendo." (*Simon,* at p. 115.) When the evidence establishes a manifest need for restraints, the trial court should impose the least obtrusive or restrictive restraint that would be effective under the circumstances. (*Duran, supra,* 15 Cal.3d at p. 291; *Poore, supra,* 13 Cal.5th at p. 285.)

Here, the trial court properly exercised its discretion in ordering appellant to wear restraints. Appellant has a long history of unprovoked and violent assaults. This was well documented in the exhibits submitted by the prosecution, which included appellant's medical, treatment, and disciplinary records. The trial court also heard from the custody sergeant who expressed "significant concerns" about courtroom safety if appellant were to remain unrestrained. The sergeant explained

4

that appellant was currently placed on the "highest level of security" at CDCR, was "highly assaultive," and had recently engaged in multiple acts of violence, including battery on a peace officer. This constitutes a "record showing" of violence or other nonconforming conduct justifying the imposition of restraints in this case. (See *Simon, supra*, 1 Cal.5th at p. 115; *Duran, supra*, 15 Cal.3d at p. 291.)

Appellant contends his conduct, which consisted primarily of punching people at the hospital, was not likely to cause "significant harm" and would not have endangered the jury or courtroom staff. He also contends he only engaged in disruptive behavior in custody and was thus not likely to disrupt the proceedings. Further, he contends that his age, declining health, and slight stature support a determination that he would not present a danger to others.

But a merely debatable ruling cannot be deemed an abuse of discretion. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390.) In any event, appellant's assaults against hospital staff, peers, and custodial officers, as well as his other nonconforming behavior while in custody can justify the use of restraints. (See, e.g., *People v. Miracle* (2018) 6 Cal.5th 318, 347; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1031-1032.)

Appellant contends that even if his conduct established a manifest need for restraints, the trial court did not consider whether shackling was the least restrictive measure. But the record reflects that the trial court did consider "other options" to ensure that appellant was "restrained in a way that he's not being observed by the jury" including ankle restraints. After considering all of the evidence, the trial court ordered appellant shackled. Given his pattern of punching people without warning

5

or provocation, the trial court could reasonably conclude that a less restrictive restraint would not have been effective.

Appellant next contends the trial court's imposition of restraints was not harmless error because the restraints spoke to the precise issue that the jury had to decide in this case, which was "appellant's potential dangerousness."

However, "'courtroom shackling, even if error, was harmless if there is no evidence that the jury saw the restraints, or that the shackles impaired or prejudiced the defendant's right to testify or participate in his defense." (*Poore*, *supra*, 13 Cal.5th at pp. 288-289.) Here, there is no evidence the jury saw the restraints or that they impaired appellant's ability to participate in his defense. The trial court took numerous measures to ensure the jury did not see appellant's restraints, including directing the parties not to stand when the jury entered and swearing appellant in outside the presence of the jury. The trial court also mitigated any possible prejudice by instructing the jury to disregard the fact that appellant was in restraints. We presume the jurors understood and followed this instruction. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

Finally, we reject appellant's contention that the evidence of appellant's dangerousness was lacking. To the contrary, the record contains overwhelming evidence that appellant posed a danger of physical harm to others. Dr. Torrez testified that she believed appellant represented a substantial danger of physical harm to others by reason of his severe mental disorder. She explained that appellant's violent behavior was in response to the command hallucinations, which told him what to do. Appellant admitted that he assaulted peers and staff because the "powers and principalities" coerced him to do so. And the jury had

extensive records documenting appellant's history of violence and aggression, including his recent RVRs while in maximum security at CDCR.  On this record, any error was harmless under any standard.

*Disposition*

The judgment (order of commitment) is affirmed.
<u>NOT TO BE PUBLISHED</u>.


YEGAN, J.


We concur:


GILBERT, P. J.


CODY, J.


7

Catherine J. Swysen, Judge

Superior Court County of San Luis Obispo

_____

Jennifer Peabody, Acting Executive Director, and Keilana Truong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Lauren Sanchez, Deputy Attorney General, for Plaintiff and Respondent.